WILLIAM GRASS et al., Plaintiffs-Appellees, v. GERALD HOMANN, d/b/a B & R Enterprises, Defendant-Appellant.

Fourth District   No. 4—84—0022

Opinion filed October 11, 1984.—Modified on denial of rehearing March 7, 1985.

Joseph P. Smith, Jr., of Mattoon, for appellant.

M. John Hefner, Jr., of Harlan Heller, Ltd., of Mattoon, for appellees.

PRESIDING JUSTICE MILLS delivered the opinion of the court:
False termite inspection report.
Suit sounding in negligence and consumer fraud.
Neither theory applies here.
Reversed and remanded.

William and Yolanda Grass bought a home at 908 Lafayette in Mattoon. The home was financed by Paul Shafer, who bought it from David and Sheryl Crawford, and then resold it to the Grasses for his purchase price—plus $1,000. Yolanda Grass wanted the home inspected for termites and termite damage before consummating the deal. On June 13, 1977, William Bright of B & R Enterprises conducted a termite inspection and gave a termite inspection certificate to the Crawfords.

Two aspects of the certificate are pertinent here. *First,* the certificate stated that B & R Enterprises was bonded, which it was not. *Second,* the certificate stated that the home was free from termites and needed no repairs because of these pests. In fact, most of the support system for the entire home—including the floor joists and main weight-bearing timbers—was entirely eaten away with termite damage. Bright admitted at trial that the conditions were known to him at the time he issued and signed the certificate.

Plaintiffs first became aware of the termite damage in June of 1979, when the floors of the home began pulling away from the walls. They brought suit against Bright in 1981 and received a judgment which Bright discharged in bankruptcy.

Plaintiffs then brought the instant suit against Gerald Homann. They alleged that at the time the certificate was issued, Homann was a partner of Bright's in B & R Enterprises. The complaint was stated in four counts. Count I alleged that B & R had breached an agreement with David Crawford, which agreement had been entered for the benefit of the Grasses, and sought damages in an amount exceeding $15,000. Count II alleged that William Bright, acting on behalf of B & R Enterprises, had negligently and carelessly performed a termite examination of the home, which negligence had damaged the plaintiffs in an amount exceeding $15,000. Count III alleged that William Bright wilfully and wantonly failed in his responsibility to per-

form a termite inspection of the premises, thereby damaging plaintiffs in an amount exceeding $15,000 and creating a liability for $50,000 in punitive damages. Count IV stated the existence of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1983, ch. 121½, par. 261 *et seq.*) and alleged that B & R Enterprises had violated the Act by misrepresenting to the plaintiffs the absence of termite damage and in issuing a certificate which bore the untrue assertion that B & R Enterprises was bonded and insured, when in fact it was not bonded. This count alleged that plaintiffs had been damaged in an amount exceeding $15,000 and also sought attorney fees.

Following a trial on all the issues, an instruction conference was held. At this time plaintiffs' counsel moved that count I (the count sounding in contract) be voluntarily dismissed. The motion was granted. Defense counsel moved that count III, seeking punitive damages, be dismissed. That motion was also granted, leaving for the jury count II, sounding in negligence, and count IV, alleging the violation of the Consumer Fraud and Deceptive Business Practices Act.

After settling on the appropriate instructions, both counsel gave closing arguments to the jury. During his closing argument, plaintiffs' attorney asked the jury to determine whether the defendant had been negligent or had violated a statute. He told them that they were to be put to a choice and could not find that the defendant had been both negligent and had violated the statute. He suggested that the evidence more strongly supported a finding based on the statutory violation.

Defense counsel gave his closing argument and the jury was instructed. After deliberations, the jury returned two verdict forms, both favoring plaintiffs. The jury found that the defendant had been negligent in his inspection of the home and set damages at $11,600. The jury also found that the defendant had violated the Consumer Fraud and Deceptive Business Practices Act and fixed damages for that violation at $2,500.

After the judgment was entered, an appeal was filed. But this court dismissed the appeal because the trial court had reserved its ruling on attorney fees sought in count II. Following a hearing on attorney fees, the court eventually decided that plaintiffs were entitled to 35% of the entire verdict as attorney fees, based on a contingent fee arrangement between the plaintiffs and their attorney.

Defendant now appeals from both the judgment and the order for attorney fees.

We reverse.

Defendant's counsel—in an inarticulate, disjointed, and poorly re-

searched effort at appellate advocacy—has alluded to numerous factors upon which he apparently relies in seeking relief for his client. (We note that during oral argument, counsel was uncertain as to exactly what type of relief was desired: reversal, remandment, or remittitur.) We have reluctantly concluded that this cause must go back for a new trial, although on grounds not raised by either party to this appeal.

As previously mentioned, plaintiffs took a voluntary dismissal of the count sounding in contract and chose to go to the jury on the counts sounding in negligence and statute. In our opinion, the loss suffered by plaintiffs in this case is simply not compensable through a cause of action sounding in negligence, and the proofs were insufficient to allow recovery under the statute.

## I. NEGLIGENCE

■ Plaintiffs here purchased a home which defendant's partner certified to be free of termites and termite damage. In fact, the home they purchased had been riddled by termites. We take judicial notice of the fact that a home which is indisputably in need of substantial repairs at the time of purchase is worth considerably less than a home which does not require such repairs. In other words, plaintiffs paid more for this property than it was worth. The reason they paid more was that defendant's partner certified to them that the home had no termite damage. Defendant's partner caused plaintiffs to suffer a *purely economic loss*. At no time did any action of defendant's partner *cause property damage through negligence*.

■ In *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 86, 435 N.E.2d 443, 450, our supreme court stated unequivocally that "[t]ort theory is appropriately suited for personal injury or property damage resulting from a sudden or dangerous occurrence ***. The remedy for economic loss, loss relating to a purchaser's disappointed expectations due to deterioration, internal breakdown or nonaccidental cause, on the other hand, lies in contract."

The court held that the tort theories of strict liability, negligence, or innocent misrepresentation could not support a cause of action which sought the recovery of purely economic losses. This left open the tort of negligent or intentional misrepresentation as a possible vehicle to support such a recovery. We are of the opinion, however, that plaintiff's complaint—as well as the facts underlying the complaint—is insufficient to state a cause of action for negligent or intentional misrepresentation.

■ It is well established that in Illinois there is no cause of action for negligent misrepresentation unless the defendant is in the business of supplying information for the guidance of others in their business transactions with third parties. (*Knox College v. Celotex Corp.* (1983), 117 Ill. App. 3d 304, 453 N.E.2d 8.) Furthermore, courts have allowed the named third parties to assert claims of tortious misrepresentation where the document relied upon contained an unequivocal guarantee of accuracy. *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656.

Turning to the facts of this case, William Bright delivered the certificate in question to Paul Shafer, a person not the plaintiff in this case. The record contains a letter from plaintiffs to Paul Shafer indicating that he furnished the certificate to plaintiffs. Further, the certificate is addressed "To Whom it May Concern" and bears no guarantee of accuracy whatsoever. Under these circumstances, we are of the opinion that plaintiffs may not state a cause of action for negligent misrepresentation against defendant. *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656.

■ While it is most unusual for a court to decide a case based on matters not directly raised by the parties, such a course of action is appropriate where the concern is the maintenance of a uniform body of precedent. (*Pritz v. Chesnul* (1982), 106 Ill. App. 3d 969, 436 N.E.2d 631.) Since this principle is decidedly at issue here, we take that unusual path and reverse and remand for a new trial to determine whether Homann may be held liable for a breach of contract entered and executed by his partner, Bright. In our opinion, remanding for rehearing is justified both because of the unusual path taken in reaching our decision and the radical change in the law rendered by our supreme court in *Moorman.*

## II. STATUTORY VIOLATION

■ In addition to seeking compensatory damages for Bright's "negligence," the Grasses also sought damages and attorney fees under the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (Ill. Rev. Stat. 1983, ch. 121½, par. 261 *et seq.*). The factual basis of the complaint was that while the termite inspection certificate bore the terms "Bonded and Insured," the partnership was, in fact, *not* bonded, and also that the certificate signed by Bright contained misrepresentations concerning termite damage present in the home.

While defendant's sole contention of error on appeal is that the trial court erred in instructing the jury concerning possible violations

of the Consumer Fraud Act, it is apparent that the real gist of his argument is that the facts proved at trial did not bring the defendant within the purview of the Act. We agree.

While the Consumer Fraud Act itself is painted in broad strokes, we do not feel that the instant case is part of the scene. The Act provides:

> "[D]eceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact *** are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." (Ill. Rev. Stat. 1983, ch. 121½, par. 262.)

When a person is damaged by a violation of section 2 (par. 262), he may bring a cause of action and receive actual damages or other relief. Ill. Rev. Stat. 1983, ch. 121½, par. 270a.

Other courts construing this Act have dutifully noted its broad scope and sounded the paean of liberal construction. (*Hurlbert v. Cottier* (1978), 56 Ill. App. 3d 893, 372 N.E.2d 734.) We are, however, not convinced that the Act was intended to extend to every transaction between contracting parties. In *Exchange National Bank v. Farm Bureau Life Insurance Co.* (1982), 108 Ill. App. 3d 212, 438 N.E.2d 1247, the court observed that the Act should not be construed to apply to a controversy which involved nothing more than an isolated breach of a contract. The court further noted, and we agree, that if such a construction were adopted, "common law breach of contract actions would be supplemented in every case with an additional and redundant remedy. Such is not the intention of the Consumer Fraud Act." 108 Ill. App. 3d 212, 216, 438 N.E.2d 1247, 1250.

In addition to the previously stated position that simple breach of contract actions should generally not give rise to private causes of action under the Consumer Fraud Act, two factual matters in the instant cause cement our views here. First, it is apparent that B & R Enterprises was only tangentially involved with the consumer transaction which is at the heart of this matter, the Grass' purchase of a home. We feel that a greater nexus must be shown and that the alleged violator of the Act must have been involved in, and stood to benefit from, the ultimate transaction which his actions influenced. Here, there was no such showing.

Second, turning to the false representation that B & R Enterprises was bonded, we fail to see how that fact, standing alone, in any

way damaged plaintiffs here. They bought a home which was worth considerably less than they thought by virtue of their reliance on a third party's representations. The fact that they thought some sort of bond was in place cannot be said to have damaged them.

Since there was no actual damage to the plaintiffs here, there can be no recovery under the Act. Therefore, the order of the trial court awarding plaintiffs $2,500 in damages for violation of the Consumer Fraud Act must be reversed. Similarly, the award of attorney fees which was based on the provisions of the Act must also be reversed.

### III. PARTNERSHIP LIABILITY

■■ We turn now to the issue pressed preeminently by the parties in this appeal: whether a partner may be held separately liable for a contractual breach committed by another partner engaged in a partnership business.

We conclude that he may.

This action was commenced by the filing of a complaint on September 21, 1981. At that time, the Civil Practice Act was still in effect. Section 27 of the Act (Ill. Rev. Stat. 1981, ch. 110, par. 27) (now Ill. Rev. Stat. 1983, ch. 110, par. 2—410) deals with actions against joint debtors or partners. It provides:

> "All parties to a joint obligation, including a partnership obligation, may be sued jointly, or separate actions may be brought against one or more of them. A judgment against fewer than all the parties to a joint or partnership obligation does not bar an action against those not included in the judgment or not sued." Ill. Rev. Stat. 1981, ch. 110, par. 27.

When Bright contracted with the Grasses, he created a partnership obligation which he admittedly failed to perform. At the time of the undertaking, Homann was Bright's partner in B & R Enterprises. As such, he was a party to a partnership obligation. The prior suit against Bright does not bar this subsequent suit against Homann, since the judgment there was not satisfied by virtue of having been discharged in bankruptcy.

In conclusion, we must reverse and remand since this cause sought recovery of purely economic damages while purporting to state a cause of action in negligence. The cause may be brought—in *contract*—against Homann as a party to a partnership obligation.

Reversed and remanded.

TRAPP and WEBBER, JJ., concur.