WILLIAM E. PERSCHALL *et al.*, Plaintiffs-Appellees, v. LORRAINE V. RANEY, d/b/a Raney Termite Control, Defendant-Appellant.

Fourth District   No. 4—85—0074

Opinion filed October 28, 1985.

980

GREEN, P.J., specially concurring.

Fleming, Messman & O'Connor, of Bloomington (Wayne P. Coffelt, of counsel), for appellant.

Jerry N. Raymer, of Schultz & Raymer Law Office, of Bloomington, for appellees.

JUSTICE WEBBER delivered the opinion of the court:

Plaintiff sued defendant in the circuit court of McLean County for the tort of negligent misrepresentation. The trial was held at bench, and at its conclusion the court awarded plaintiffs judgment in the amount of $4,223.97 and costs. Defendant appeals.

The issues raised are: (1) the manifest weight of the evidence, (2) lack of foundation for the admission of certain photographs, and (3) lack of sufficient evidence to support the award of damages. At the time of oral argument, we requested supplemental briefs on the application of our recent opinion in *Grass v. Homann* (1984), 130 Ill. App. 3d 874, 474 N.E.2d 711. We have concluded that *Grass* is distinguishable from the instant case and affirm the judgment.

The operative facts as developed at trial are contained in a bystander's report prepared in accordance with Supreme Court Rule 323(c) (87 Ill. 2d R. 323(c)). That report reveals the following.

Plaintiffs contracted to purchase a residential property in Bloomington. The contract provided for a termite inspection showing that there was no active infestation of termites or other wood-destroying insects and that there was no structural damage due to past or present infestations. The real estate broker representing the seller of the property engaged defendant to make the inspection and prepare the report. The defendant, through her employee who made the inspection and report, knew that it would be presented to and relied upon by the purchasers.

Defendant's employee, Finck, went upon the premises. In the basement a partition divided that area into two spaces, an east room and a west room. The sill plate, floor joists, and structural members in the east room were visible and accessible except where obscured by furnace ductwork. In the west room the floor joists and structural members were not visible and accessible because they were covered with a metal ceiling. There was a detached garage on the premises,

but it was locked at the time of Finck's inspection.

The inspection covered the exterior of the house and the basement. The garage was not inspected. Finck stated that if he cannot gain access to the interior of a structure, he does not inspect either the exterior or the interior. The exterior inspection of the house revealed that it had previously been treated for termites; a previous infestation was noted in the basement in the sill areas; however, the report found "no new or active infestation."

The termite inspection report contained Finck's opinion that there was no structural damage to the property. Finck testified that although he was unqualified to give an opinion regarding structural damage, he based his opinion that no structural damage existed upon his inspection of accessible areas. The termite inspection report provided:

> "NOTICE: THIS IS NOT A STRUCTURAL DAMAGE REPORT. It is a report of the visual evidence of infestation and damage caused by termites or other wood destroying organisms based upon a careful visual inspection of all accessible areas by a qualified inspector. The inspector's findings reflect visible conditions on the date of inspection which are summarized in this report. This report is not a guarantee that infestation or damage does or does not exist, nor is it a guarantee that future infestation or damage will not occur. This company and its employees are not experts in the construction or building trades. This report does not and cannot state the extent of any structural damage caused by termite infestation. If any past or present infestation or damage is noted on this report, it is recommended that the owner, or other interested parties, contact a qualified engineer, architect or other qualified expert in the construction or building trades to determine the existence, nature and extent of structural damage to the inspected property."

The report also provided that treatment of the property was not recommended.

Prior to closing, plaintiffs inspected the property. Because the power was off, there were no lights in the basement. From their observation in the dark, plaintiffs observed no problems. Also prior to closing, plaintiffs were given a copy of the termite inspection report prepared by Finck. No questions were asked of the seller concerning the report or damage to the property.

Approximately three days after the closing, plaintiffs visited the property. By this time the power had been turned on and lights were

available in the basement. Plaintiff William Perschall stated that a portion of a floor joist in the area above the furnace "looked funny." He touched the joist and a portion of it broke off in his hand. Further investigation revealed that other wood structural members in the basement were likewise afflicted. Plaintiffs then called another termite and pest control service.

An employee of the second service, Vandeveer, made an inspection. At the time he was not a certified technician under the provisions of the Structural Pest Control Act (Ill. Rev. Stat. 1983, ch. 111½, par. 2203.06), but he had been certified in the past. Vandeveer's report indicated a previous termite infestation and treatment of the house and an active termite infestation in both the interior and exterior of the garage. Additionally, the report stated that there was an active infestation of powder post beetles in most joists and sills in the basement, together with extensive structural damage in both the east and west rooms in the basement, and that all of this would have been apparent upon a careful inspection.

After Vandeveer's inspection, plaintiff William Perschall removed all the metal ceiling in the basement. Extensive structural damage was observed in the sills and joists. Plaintiff Tresea then called defendant and complained about Finck's report. Finck returned to the premises and conducted a further inspection in the presence of Tresea Perschall. He again found no active infestation. He observed the structural damage but testified that it was not accessible on his previous inspection because of the presence of the metal ceiling.

Plaintiff William Perschall testified on the matter of damages. New joists and sills were placed in the northwest portion of the basement; elsewhere, new joists were placed alongside the existing ones; four interior walls, all ceilings, and some exterior walls were replaced. Invoices for materials totaled $1,223.97. The work was done by William and his relatives, although they were not carpenters by trade. He maintained that 450 hours were required, 350 of them being his own time. He repaid his relatives by helping them with carpentry work. He sought $10 per hour for labor.

William also testified that the garage was replaced in its entirety, but no bills or receipts relating to it were offered.

Plaintiffs offered a number of photographs taken by William and relating to the problems in the basement. Defendant objected to some of them, since the exact time at which they had been taken had not been established. The trial court overruled the objections.

The trial court entered judgment for the plaintiffs, finding that the defendant had been guilty of negligent misrepresentation. It as-

sessed damages (1) $1,223.97 for materials used in replacing the damaged structural members, and (2) $3,000 for labor. Nothing was allowed for the new garage, since the extent of the damage to the old one and the similarity of the new garage to the old had not been sufficiently established.

Because the trial court's judgment was entered about 60 days prior to our opinion in *Grass*, we felt that in fairness the parties should have an opportunity to view the instant case in light of *Grass*. In *Grass*, on similar facts, this court held that an action for negligent misrepresentation would not lie but remanded the case for further proceedings under a contract theory which had originally been pleaded but voluntarily dismissed at the instruction conference. The rationale was that a cause of action for negligent misrepresentation existed when the defendant was in the business of furnishing information for the guidance of others in their dealings with third parties; and that named third parties could maintain the action when there was an unequivocal guaranty of accuracy. The facts in *Grass* showed that the certificate was delivered to someone other than the plaintiff, that it was addressed "To Whom It May Concern," and that it bore no representation of accuracy. Furthermore, the principal issue in *Grass* was the derivative liability, if any, of the defendant. There plaintiff had obtained a judgment against the one making the termite inspection but that judgment had been discharged in bankruptcy. The action at bar in *Grass* was against the partner of the inspector on the contract made by the inspector.

In the instant case there is no question of derivative liability nor of a contract action. The suit is directly against the entity making the inspection. The certificate, while not specifically naming the plaintiffs, was issued to a real estate broker with the knowledge of the defendant that it would be presented to and relied upon by the purchasers. Finally, notwithstanding the exculpatory language quoted above, the certificate did contain an opinion that there was no structural damage and no active infestation of pests.

In summary, we find *Grass* distinguishable on its facts and limited to its facts.

■ Liability for negligent misrepresentation will be found when one, in the course of his business, negligently supplies information to another who suffers harm in reliance on the information. (*Duhl v. Nash Realty, Inc.* (1981), 102 Ill. App. 3d 483, 429 N.E.2d 1267.) The tort was first recognized in Illinois in *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656. There a surveyor furnished not only an erroneous survey but also an absolute guaranty of accuracy on his plat.

The supreme court allowed a third party, not in privity with the surveyor, to recover damages from him for negligent misrepresentation.

The court's discussion in the course of its opinion in *Rozny* of the "absolute guarantee of accuracy" has led to some difficulty in establishing the requirements of the tort of negligent misrepresentation. Some subsequent cases fail to mention it (*Duhl v. Nash Realty, Inc.* (1981), 107 Ill. App. 3d 483, 429 N.E.2d 1267); others specifically reject it (*McAfee v. Rockford Coca-Cola Bottling Co.* (1976), 40 Ill. App. 3d 521, 352 N.E.2d 50); still others cite it as a requirement when third parties are involved. *Grass v. Homann* (1984), 130 Ill. App. 3d 874, 474 N.E.2d 711.

After closely examining these authorities, we believe that a guaranty of accuracy is not a requirement for the tort, but is a factor to be considered in determining whether a plaintiff's reliance is foreseeable and justifiable. This was the position taken by the *McAfee* court, and while not articulated quite so clearly, the same position was taken in *Grass*. We note that the *Rozny* court held section 552 of the Restatement (Second) of Torts to be apposite. That section contains no mention of a guaranty of accuracy as a predicate for liability. Moreover, the *Rozney* court stated that the guaranty of accuracy was among "factors *** relevant to our holding." 43 Ill. 2d 54, 67, 250 N.E.2d 656, 663.

■■ In the instant case, although defendant's inspection report did not contain an unequivocal guaranty of accuracy and was not delivered to the plaintiffs directly, other factors exist making plaintiffs' reliance foreseeable and justifiable. Defendant was aware that the premises being inspected were being sold and that the report would be provided to and relied upon by prospective purchasers, such as plaintiffs. Also, defendant invited substantial reliance on the report by stating that there was no structural damage or infestation; therefore, plaintiffs need not consult an expert to determine if such damage or infestation was present nor need they seek treatment of the property. This statement on the face of the report negates the effect of the disclaimer stating that the report was not a guaranty that infestation did or did not exist. Further factors to be considered in determining whether plaintiffs' reliance was justifiable include the statements contained in the report that the defendant had inspected the property on at least four previous occasions and had conducted a careful inspection of all accessible areas by a qualified inspector on this particular occasion.

In her supplemental brief, the defendant has argued that plaintiff is seeking recompense for economic loss only and that such loss is not

recoverable in a tort action under the holding in *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443. We need not reach the question of the nature of the loss, since the supreme court in *Moorman*, citing *Rozny*, held that "economic loss is recoverable *** where one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representations ***." 91 Ill. 2d 69, 88-89, 435 N.E.2d 443, 452.

■ We turn next to the defendant's contentions on the merits of the appeal. In connection with her argument on the manifest weight of the evidence, she first maintains that the trial court erred in not finding the plaintiffs guilty of assumption of risk. Apart from any question as to whether that doctrine has a place in a tort action of this kind, assumption of risk is an affirmative defense which must be specifically pleaded and proved by a defendant. (*Sweeney v. Matthews* (1968), 94 Ill. App. 2d 6, 236 N.E.2d 439, *aff'd* (1970), 46 Ill. 2d 64, 264 N.E.2d 170.) No such pleading by the defendant appears in the record.

■ Next defendant argues that there is nothing in the record to indicate that the conditions when Vandeveer made his inspection were the same as existed when Finck made his. Vandeveer inspected on July 3, 1980, and Finck on June 25, 1980. Negligence may be established by direct evidence, circumstantial evidence, and the reasonable inferences to be drawn therefrom. (*Mort v. Walter* (1983), 98 Ill. 2d 391, 457 N.E.2d 18.) Since the inspections were made only eight days apart, the reasonable inference is that conditions remained the same. There is also Vandeveer's uncontroverted statement that a careful inspection would have revealed the infestation at the earlier date.

■ Allied with the foregoing argument is defendant's contention concerning the credibility of witnesses. She claims the plaintiffs are unworthy of belief when they testified that the basement was dark when they made their examination. She states that there must have been some light coming from the windows. However, there is no evidence in the record that there were any windows in the basement. In her brief she also assails Vandeveer as not being licensed at the time of his inspection and as being motivated solely by sales and money. We decline to take sides in such an argument and note only that the credibility of witnesses is primarily a question for the trier of fact and the resolution of the question by the trier will not be upset on appeal even where the evidence is conflicting. *People v. Foster* (1979), 76 Ill. 2d 365, 392 N.E.2d 6; *People v. Jackson* (1982), 105 Ill. App. 3d 750, 433 N.E.2d 1385; *Arakie v. Hatoff* (1972), 5 Ill. App. 3d 1073, 284

N.E.2d 703.

We have no basis upon which to determine that the trial court's judgment was against the manifest weight of the evidence.

Nor is defendant's objection to the photographs well taken. Plaintiff William Perschall testified and identified each one as being taken before or after the removal of the metal ceiling. The time frame for the removal of the ceiling was well established by Finck. He stated that the ceiling was in place on his inspection of June 25 and that some of it had been removed on his return inspection after the complaint made by plaintiff Tresea Perschall.

■■ ■ The evidence is clear that there was a change in the property, *i.e.*, the removal of the ceiling tiles, but the testimony makes clear what the changes were. The fact that conditions had changed at the time a photograph was taken does not render it inadmissible if, after the changes have been acknowledged, the trier of fact can understand the correct representation and will not be misled. (*Warner v. City of Chicago* (1978), 72 Ill. 2d 100, 378 N.E.2d 502.) The evidence in its entirety established the condition of the portions of the house depicted in the photographs at all relevant times. The trial court did not err in overruling defendant's objections.

■■ Finally, defendant claims that an insufficient basis was laid for the trial court's assessment of damages. We disagree. Plaintiffs introduced invoices for materials used in repair of the house and William testified that these were necessary. He also testified as to the hours of labor, that the prevailing rate in the area for carpenters was $18 per hour, and that $10 per hour for his labor and that of his relatives would be reasonable. The evidence was neither disputed by the defendant nor objected to on the basis of William's competency to testify on such matters. The issue is apparently raised for the first time on appeal and therefore cannot be considered. *Moehle v. Chrysler Motors Corp.* (1982), 93 Ill. 2d 299, 443 N.E.2d 575.

For all the foregoing reasons, the judgment of the circuit court of McLean County is affirmed.

Affirmed.

MORTHLAND, J., concurs.

PRESIDING JUSTICE GREEN, specially concurring:

I concur in the decision to affirm. However, I do not deem the circumstances here to be substantially different than in *Grass*. The direction of the report there to persons whom it might concern indi-

cated that it was being prepared for the use of persons other than those requesting it. The foreseeability of reliance there was as great as here. The fact that the liability there was vicarious while here it is direct makes no difference. I cannot reconcile the two decisions. Accordingly, for the reasons stated by the majority but which do not seek to distinguish the cases, I would overrule *Grass*.