John J. GERDES, Jr., Beryl R. Gerdes, and Robert Gerdes, Plaintiffs,

v.

JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY; Frank E. Clegg, d/b/a Columbus General Agency; Michael J. Sekara, d/b/a Columbus General Agency; and Raymond E. Jones, Defendants.

No. 88 C 2024.

United States District Court, N.D. Illinois, E.D.

May 8, 1989.

Roger D. Gomien, Paul E. Root, Gomien, Root & Rigazio, Morris, Ill., David P. List, Eugene J. Schoon, Sidley & Austin, Chicago, Ill., for plaintiffs.

J. Robert Geiman, David J. Novotny, William A. Chittenden, III and Sheryl J. Manning, Peterson Ross Schloerb & Seidel, Gary A. Grasso, Heather M. Higgins Alderman, Hinshaw Culbertson Moelmann, Hoban & Fuller, Chicago, Ill., Patrick F. Smith, Schottenstein, Zox & Dunn, Columbus, Ohio, Barbara A. McDonald, Lord Bissell & Brook, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

## I. INTRODUCTION

The plaintiffs—John, Beryl, and Robert Gerdes—have brought this diversity suit alleging various state-law claims arising out of their purchase of certain life insurance policies. The plaintiffs' amended complaint[1] includes counts for reformation of the contracts against John Hancock Life Insurance Co. (Hancock) (Count I); for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev. Stat. ch. 121½, para. 262 (1987), against Hancock, Frank Clegg, Michael Sekara, and Raymond Jones (Counts II, IV, VII, and X, respectively); for common law fraud against Hancock, Clegg, Sekara, and Jones (Counts III, V, VIII, and XI, respectively); and for negligent misrepresentation against Clegg, Sekara, and Jones (Counts VI, IX, and XII, respectively). In essence, the plaintiffs allege that they bought the Hancock life insurance policies after Jones, as an agent of the Columbus General Agency (the insurance marketing company of Clegg and Sekara), made certain misrepresentations to the plaintiffs regarding the costs of maintaining the policies; Hancock, however, allegedly refused to comply with the terms and conditions as represented during the sale of the policies.

---

1. The motions to dismiss were directed to the original complaint. After the motions were fully briefed, the plaintiffs filed an amended complaint that added claims for punitive damages; in all other respects, the complaints are identical. Accordingly, the court will consider the motions to dismiss to apply to the first amended complaint.

Clegg, Sekara, and Jones have moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Counts VI, IX, and XII for failure to state a claim for negligent misrepresentation. In addition, Clegg has moved pursuant to Rule 9(b) to dismiss Counts IV and V for failure to plead fraud with particularity. For the following reasons, the court grants the defendants' motions to dismiss Counts VI, IX, and XII for failure to state a claim upon which relief can be granted, but denies Clegg's motion to dismiss Counts IV and V for failure to comply with the specificity requirement of Rule 9(b).

## II. FACTS

For purposes of a motion to dismiss, the court must accept as true all well-pleaded factual allegations in the complaint and must draw all reasonable inferences in the light most favorable to the plaintiffs. *Powe v. City of Chicago*, 664 F.2d 639, 642 (7th Cir.1981). A complaint should not be dismissed for failure to state a cause of action unless it is beyond doubt that the plaintiffs could prove no set of facts that would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). The court, however, need not accept as true legal conclusions or opinions that are couched as factual allegations. *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). Accordingly, the facts of this case, as alleged in the plaintiffs' amended complaint, are as follows.

The dispute in this case stems from the sale of Hancock life insurance policies by Jones to the Gerdes while Jones was acting as an agent of Sekara and Clegg. Clegg operated the Columbus General Agency, an enterprise that markets insurance products, before April 1, 1985; thereafter, Sekara managed the business. Between 1981 and 1983, the plaintiffs bought three life insurance policies for John Gerdes. The total face value of these insurance policies was $700,000.

In 1984, Jones contacted John Gerdes and solicited from him the purchase of a fourth life insurance policy in the face amount of $300,000. As an inducement to purchase this fourth policy, Jones represented that if the premiums on all four life insurance policies (with a total face value of $1,000,000) were paid up in the year 1990 (after payment of the 1989 premium), Gerdes would not be required to pay any further premiums during the remaining years of his life.

In 1985, the Gerdes bought a fifth life insurance policy with a face value of $500,000—this time on the life of Beryl Gerdes. Jones represented that no cash outlay would be required to put the policy in force; rather, the premium could be financed through a loan from Profesco Corporation, an affiliate of Hancock; Jones stated that if the Gerdes would assign the increase in the cash value of John Gerdes' life insurance policies as security for the loan, the loan would be paid by this increase in value. In addition, Jones again told the Gerdes that the premiums for the other four policies would remain unchanged and that the last premium to be paid would still be in the year 1989.

The plaintiffs allege that notwithstanding the agreements between the parties, Hancock refused to comply with the terms and conditions as represented during the sale of the fourth and fifth policies. They claim that Jones (and, under *respondeat superior* principles, Sekara and Clegg)[2] can be held liable for Jones' alleged negligence in misrepresenting the terms and conditions of the life insurance policies. The defendants contend that the misrepre-

---

**2.** The plaintiffs have not alleged any personal wrongdoing on the part of Clegg or Sekara. Instead, they have alleged that Jones was the agent of Clegg and Sekara and that Clegg and Sekara knew or should have known that Jones was engaging in the alleged misconduct. Therefore, any liability of Clegg and Sekara is derivative. Furthermore, since Clegg operated the agency until April 1985 (and Sekara thereafter), the plaintiffs claim that Clegg is responsible only for the alleged misrepresentations surrounding the sale of the fourth policy (which took place in 1984) and that Sekara is responsible only for the fifth (which took place in October 1985).

sentation counts fail to state a claim because Jones was not in the business of supplying information for the guidance of others in their business transactions with third parties. Clegg also claims that the plaintiffs have not pleaded fraud with particularity.

## III. ANALYSIS

### A. Negligent Misrepresentation

#### 1. *General Principles*

■ Illinois law prohibits recovery of economic losses under a tort theory.[3] *See, e.g., Moorman Mfg. Co. v. National Tank Co.,* 91 Ill.2d 69, 88, 61 Ill.Dec. 746, 754, 435 N.E.2d 443, 451 (1982) (policy underlying rule against recovery of pecuniary losses in tort is that "contract, rather than tort, law provides the appropriate set of rules for recovery"); *see also Bethlehem Steel Corp. v. Chicago E. Corp.,* 863 F.2d 508, 518–25 (7th Cir.1988) (extensive discussion of Illinois law); *cf. East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986) (action in admiralty; after extended discussion of interrelationship between tort and contract, Court held that plaintiff could not recover in tort for economic loss). The Illinois courts, however, have articulated several narrow exceptions to this rule. One of these limited exceptions allows recovery of economic losses under a negligent misrepresentation theory when two elements are present: First, the defendant must be in the business of supplying information, and second, the defendant must provide this information for the guidance of others in their business relations with third parties.[4] *See, e.g., Rankow v. First Chicago Corp.,* 870 F.2d 356, 360–66 (7th Cir.1989) (comprehensive delineation of development of negligent misrepresentation in Illinois); *First Nat'l Bank v. Une,* No. 87 C 10831, 1988 WL 130050 (N.D.Ill. Nov. 28, 1988); *Mutuelle Generale Francaise Vie v. Life Assurance Co.,* 688 F.Supp. 386, 398–99 (N.D.Ill.1988); *Franch v. Smith Barney, Harris Upham & Co.,* No. 83 C 3765, 1987 WL 16029 (N.D.Ill. Aug. 12, 1987); *National Union Fire Ins. Co. v. Continental Ill. Corp.,* 654 F.Supp. 316, 319 (N.D.Ill.1987); *Riordan v. Smith Barney Harris Upham & Co.,* No. 84 C. 3216, 1986 WL 7653 (N.D.Ill. July 2, 1986); *Miller v. Affiliated Fin. Corp.,* 600 F.Supp. 997, 998–99 (N.D.Ill.1984); *National Can Corp. v. Whittaker Corp.,* 505 F.Supp. 147, 150 (N.D.Ill.1981); *Knox College v. Celotex Corp.,* 117 Ill.App.3d 304, 307–08, 72 Ill. Dec. 703, 706, 453 N.E.2d 8, 11 (1983); *Black, Jackson & Simmons Ins. Brokerage, Inc. v. IBM,* 109 Ill.App.3d 132, 135–36, 64 Ill.Dec. 730, 732, 440 N.E.2d 282, 284 (1982); *cf. Zahorik v. Smith Barney, Harris Upham & Co.,* 664 F.Supp. 309, 312–14 (N.D.Ill.1987) (third-party requirement not distinct element of cause of action because "the existence of a third party is implicit in the requirement that the defendant be in the business of supplying information for the guidance of others in their business transactions"); *Moorman,* 91 Ill.2d at 88–89, 61 Ill.Dec. at 754–55, 435 N.E.2d at 451–52 (articulating "business of supplying information" test, but not explicitly requiring third-party involvement).[5]

---

**3.** All of the parties concede that the plaintiffs seek compensation for economic losses.

**4.** Intentional misrepresentation is another exception to the rule against economic recovery under a tort theory. *Moorman,* 91 Ill.2d at 88–89, 61 Ill.Dec. at 755, 435 N.E.2d at 452. In addition, *Rosos Litho Supply Co. v. Hansen,* 123 Ill.App.3d 290, 297–98, 78 Ill.Dec. 447, 453–54, 462 N.E.2d 566, 572–73 (1984), allows recovery for economic losses in professional malpractice actions because, among other things, such recovery was well established in law prior to *Moorman.*

**5.** In determining when a duty of a care exists in the context of negligent misrepresentation, a small minority of Illinois courts have relied on section 552 of the Restatement (Second) of Torts (1965), which is entitled "Information Negligently Supplied for the Guidance of Others." Section 552 provides, in pertinent part:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

a. *"In the Business of Supplying Information."*—The determination whether an enterprise is "in the business of supplying information" requires a fact-intensive, case-specific analysis focusing on the "nature of the information at issue in a particular case and its relation to the kind of business being conducted." *Rankow*, at 361. Although "[t]here has been no clear discussion ... to date as to what principle should be applied in determining whether a party is 'in the business of supplying information,' " *id.* at 363, the types of businesses involved generally fall into one of three categories.

First, at one end of the continuum are those businesses that provide a noninformational product or service—usually tangible goods; [6] in this situation, any representation made by the defendant with respect to, for example, operating instructions and warranty information is merely incidental to the sale of the product. *Id.* at 363–64. Notwithstanding the fact that the defendant supplied this information during a business transaction, courts for the most part have held that this type of information does not fulfill the "in the business of supplying information" requirement and have found the following entities not to be in the business of supplying information: an investment company selling corporations, *Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp.*, No. 87 C 0299, 1988 WL 101267 (N.D.Ill. Sept. 23, 1988); a telecommunications enterprise, *Landon v. GET Communications Servs.*, 696 F.Supp. 1213, 1220 (N.D.Ill.1988); a law firm drafting letters to a nonclient third party, *Schaps v. R.A. Transp. Servs.*, No. 86 C 4582, 1987 WL 12178 (N.D.Ill. June 9, 1987); a corporation marketing and implementing computer software systems, *Ana-*

---

Closely following the language of the Restatement, these courts apparently have required only that the defendant made the negligent misrepresentation in the course of his business. *See, e.g., Chicago Bd. of Educ. v. A, C & S, Inc.,* 171 Ill.App.3d 737, 756, 121 Ill.Dec. 643, 655, 525 N.E.2d 950, 962 (1988); *Perschall v. Raney,* 137 Ill.App.3d 978, 983–85, 92 Ill.Dec. 431, 434–35, 484 N.E.2d 1286, 1289–90 (1985); *Duhl v. Nash Realty,* 102 Ill.App.3d 483, 493–94, 57 Ill. Dec. 904, 912–13, 429 N.E.2d 1267, 1275–76 (1981).

The language in these cases is more than a little suspect. First, of the three cases only *A, C & S* explicitly stated that the defendant need not be in the business of supplying information to be subject to a claim of negligent misrepresentation. 171 Ill.App.3d at 737, 121 Ill.Dec. at 655, 525 N.E.2d at 962. In support of this analysis, however, the court in *A, C & S* mysteriously cited *Rozny v. Marnul,* 43 Ill.2d 54, 250 N.E.2d 656 (1969), the first Illinois case to recognize the tort of negligent misrepresentation. In *Rozny,* the Illinois Supreme Court permitted the plaintiff, who purchased a piece of property subsequent to an inaccurate survey of the lot, to recover damages from the surveyor under the tort of negligent misrepresentation. The court in *Rozny* relied in part on "[t]he undesirability of requiring an innocent reliant party to carry the burden of a surveyor's professional mistake." *Id.* at 67–68, 250 N.E.2d at 663. *Moorman* cited *Rozny* as support for the proposition that economic recovery should be allowed when a defendant makes a negligent misrepresentation while "in the business of supplying information." 91 Ill.2d at 89, 435 N.E.2d at 452. *A, C & S* perhaps can be distinguished since the court held that the case did not involve econom-

ic loss at all, but rather involved allegations of (at least potential) personal injury as a result of asbestos installation in Chicago's public schools.

Second, *Perschall* and *Duhl* may be distinguished because the defendants in those cases could have been categorized as being in the business of supplying information; in *Perschall* the defendant negligently prepared a termite inspection report, and in *Duhl* the defendant real estate broker allegedly negligently misrepresented the value and salability of the client's property, all the while assuring the client that she had special expertise in the area. Furthermore, later in the *Perschall* opinion the court rejected a *Moorman* challenge to the suit and, quoting *Moorman,* held that the defendant was "in the business of supplying information." 137 Ill.App.3d at 984–85, 92 Ill.Dec. at 435, 484 N.E. 2d at 1290. Thus, the mere fact that some courts have cited the literal language of the Restatement does not unquestionably indicate that these courts would not require that the defendant be in the business of supplying information.

6. Although the Seventh Circuit has noted that the issue is not whether the product was tangible, but whether it was noninformational, it has used tangible goods as a proxy for noninformational products or services: "first, they provide the clearest case of non-informational products (because the transfer of intangible products and services more often depends heavily upon an exchange of information); and second, they are the only examples ... from the Illinois courts of businesses that have been held *not* to be in the business of providing information." *Rankow,* at 364 n. 10. (emphasis in original).

lysts Int'l Corp. v. Recycled Paper Prods., Inc., No. 85 C 8637, 1987 WL 12917 (N.D. Ill. June 19, 1987); a seller of an apartment building, Tan v. Boyke, 156 Ill.App.3d 49, 59, 108 Ill.Dec. 229, 235, 508 N.E.2d 390, 396, appeal denied, 116 Ill.2d 577, 113 Ill. Dec. 318, 515 N.E.2d 127 (1987); a manufacturer and seller of roofing materials, Knox, 117 Ill.App.3d at 308, 72 Ill.Dec. at 706, 453 N.E.2d at 11; a computer systems manufacturer, Black, Jackson & Simmons, 109 Ill.App.3d at 136, 64 Ill.Dec. at 732, 440 N.E.2d at 284; and a corporation that contracted to deliver and install dry cleaning equipment, Hi–Grade Cleaners, Inc. v. American Permac, Inc., 561 F.Supp. 643, 644 (N.D.Ill.1982).

Second, at the opposite end of the continuum are businesses that provide a product consisting solely of information. Under these circumstances, courts generally have held that this kind of information meets the "in the business of supplying information" requirement. Rankow, at 364. For example, an Illinois court has held that real estate brokers are in the business of supplying information. See Zimmerman v. Northfield Real Estate, Inc., 156 Ill.App. 3d 154, 164, 109 Ill.Dec. 541, 547, 510 N.E. 2d 409, 415 (1986), appeal denied, 116 Ill. 2d 578, 113 Ill.Dec. 320, 515 N.E.2d 129 (1987).

A third category, lying in the center of the continuum, includes entities whose business consists of furnishing both information as well as noninformational goods and services. Rankow, at 364. Businesses falling into this category generally provide financial services and, therefore, present a particularly difficult problem, since "there is a very thin line between an exchange of information about finances and actual financial transactions." Id. at 364–65 (citing Duchossois Indus. v. Stelloh, No. 87 C 4132, 1988 WL 2794 (N.D.Ill. Jan. 13, 1988)). In these cases, the inquiry is whether the information provided was an important part of the product offered. Id. at 364–65. If the information furnished along with the noninformational goods or services was central to the business transaction, the individual providing this information is deemed to be in the business of supplying information. Id.

■ b. Third–Party Involvement.—In addition to satisfying the "in the business of supplying information" requirement, a plaintiff asserting a claim for negligent misrepresentation also must allege facts showing that he used the information to guide him in a business transaction with a third party—that is, a party other than the defendant. Id. at 362–63; Mutuelle Generale, 688 F.Supp. at 399. Compare Black, Jackson & Simmons, 109 Ill.App.3d at 136, 64 Ill.Dec. at 732, 440 N.E.2d at 284 (third-party requirement not met when seller provided plaintiffs with information that guided them in their purchase of seller's computer) with Rankow, at 362–63 (third-party requirement met when bank supplied plaintiff with information on which he relied in making short sales in the market). Furthermore, this third-party requirement is not satisfied when the plaintiff receives from a sales agent information that he uses to guide himself in his dealings with the agent's principal, since the principal and agent are, in effect, one party. See, e.g., Loziuc v. Smith Barney, Harris Upham & Co., No. 86 C 3293, 1986 WL 12324 (N.D.Ill. Oct. 24, 1986); Riordan, No. 84 C 3216; Franch, No. 83 C 3765.

■ The requirement of third-party involvement also intersects in many respects with the requirement that the defendant be in the business of supplying information and that he engage in that business with the plaintiff at the time of the alleged misrepresentation. For example, a real estate broker (whose business it is to "supply information") can be liable to a plaintiff for negligent misrepresentation only if the broker provided the plaintiff with information on real estate—and not if the broker made misrepresentations in the context of selling his office equipment. See Zahorik, 664 F.Supp. at 314. In the latter case, there normally is no third-party involvement, since the plaintiff generally will use the information only in determining whether to deal with the seller (or the seller's agent). On the other hand, if the relationship between the plaintiff and the defendant is in

the context of the defendant's information-supplying business, a third party usually will be involved, since the plaintiff probably will use that information not for information's sake, but for guidance in his business dealings with another party. *Id.* In this manner, the third-party requirement helps focus the inquiry on "the nature of the information at issue *in a particular case* and its relation to the kind of business being conducted." *Rankow,* at 361 (emphasis added).[7]

In sum, Illinois courts have limited recovery of economic losses under a negligent misrepresentation theory to cases in which the defendant was in the business of supplying information for the plaintiff's guidance in his business relationships with third parties. Moreover, since even sellers of tangible products normally provide some sort of information in the course of their business, courts must construe narrowly the negligent-misrepresentation exception to the *Moorman* doctrine prohibiting recovery of economic losses in tort, lest the exception swallow the rule.[8]

### 2. *As Applied to This Case*

 Applying the foregoing principles to the facts of this case, the court concludes that the plaintiffs have failed to state a claim for negligent misrepresentation. First, even though the plaintiffs allege, in conclusory fashion, that Jones "was in the business of providing information," Amended Complaint, Count XII, ¶ 29, the amended complaint is devoid of well-pleaded facts indicating that Jones was in

the business of supplying information. The plaintiffs allege only that Jones was an "insurance producer" and that he sold certain Hancock policies to them. On these facts, however, this court cannot determine whether the nature of Jones' business was to supply information or whether he was engaging in that business when he made the alleged misrepresentations.

Frequently, dealings between insurers and the public are handled by intermediaries. The intermediaries in the insurance industry generally are classified as either insurance agents or insurance brokers. *Browder v. Hanley Dawson Cadillac Co.,* 62 Ill.App.3d 623, 628, 20 Ill.Dec. 138, 142, 379 N.E.2d 1206, 1210 (1978). An insurance agent has an ostensible connection to a particular insurance company and represents the insurer in his dealings with third parties, while an insurance broker has no fixed and continuous relationship with an insurer and holds himself out to the public for employment. *Id.* at 628–29, 20 Ill.Dec. at 142, 379 N.E.2d at 1210; *see also City of Chicago v. Barnett,* 404 Ill. 136, 140–42, 88 N.E.2d 477, 480–81 (1949); *Galiher v. Spates,* 129 Ill.App.2d 204, 206–07, 262 N.E.2d 626, 628 (1970). *See generally* 16 J. Appleman & J. Appleman, *Insurance Law and Practice* §§ 8725–8727 (1981) [hereinafter *Appleman on Insurance* ].

In this case it is plausible that Jones acted as an insurance agent who sold Hancock insurance policies only and therefore discussed only Hancock products with the plaintiffs. If so, the nature of Jones' busi-

---

7. In fact, the court in *Zahorik* held that there normally is no separate requirement of third-party involvement, since "the existence of a third party is implicit in the requirement that the defendant be in the business of supplying information for the guidance of others in their business transactions and that the defendant's relationship with the plaintiff is in the context of that business." 664 F.Supp. at 314.

8. An objective underlying the "economic loss" doctrine is to preserve the sphere appropriately governed by contract law from intrusion by tort. *See* Feinman, *The Jurisprudence of Classification,* 41 Stan.L.Rev. 661, 674 (1980). Allowing parties to circumvent their contract remedies by recovering pecuniary losses under a tort theory would frustrate the ability of contracting

parties to allocate the risk of loss and, therefore, would undermine the certainty in commercial practices. *Black, Jackson & Simmons,* 109 Ill. App.3d at 134, 64 Ill.Dec. at 731, 440 N.E.2d at 283; *see also* Towers & Gordon, *Circumvention of Article 2: Tort Remedies for Breach of Contract,* 19 U.C.C.L.J. 291, 315 (1987). Because of this danger, it is crucial that the doctrine of negligent misrepresentation not be expanded beyond its limited scope. *Cf. East River,* 476 U.S. at 866, 106 S.Ct. at 2299 ("Products liability grew out of a public policy judgment that people need more protection from dangerous products than is afforded by the law of warranty.... It is clear, however, that if this development were allowed to progress too far, contract law would drown in a sea of tort.").

ness was to provide a noninformational product (an insurance policy), and any information provided by the defendant would have been merely incidental to the sale of the policy. This situation would lie at the end of the continuum where the information provided is of the sort that does not meet the "in the business of supplying information" test.

On the other hand, it is conceivable that Jones was an independent insurance broker who sold policies for multiple insurance companies. If so, then the nature of Jones' business may have been to provide information as well as a noninformational product. Under such circumstances, his business could lie in the gray area between those cases in which the defendants are clearly in the business of supplying information and those in which they are not.[9] Consequently, the issue would be whether the information provided was a significant aspect or "important part" of the product offered. Although this again would require a fact-intensive inquiry, of possible relevance would be whether the plaintiffs had paid a separate fee for the advice provided by Jones. The plaintiffs, however, have not pleaded sufficient facts from which this court can determine the nature of the information provided and its relationship to Jones' business.

■■■ Second, the plaintiffs also have failed to assert factual allegations which would show that Jones supplied information for the guidance of others in their business relationships with third parties. The plaintiffs have alleged (again, in conclusory fashion) that the information was provided by Jones as an agent of the Columbus General Agency in order to guide individuals purchasing insurance policies to be issued by third parties. Yet the plaintiffs also allege that Jones was an agent and sub-franchisee of Profesco Corporation, a finance company used to finance

premiums for policies issued by Hancock, and that Jones was acting in the scope of his agency with Hancock when he contacted Gerdes to solicit from him the purchase of the fourth policy. Amended Complaint, Count XII, ¶ 16.

The allegation of Jones' agency relationship with Hancock, however, contradicts the plaintiffs' conclusory allegation of third-party involvement. If Jones was an insurance agent who provided the plaintiffs with information which guided them in their dealings with his principal (Hancock), then a third party was not involved in the transaction. An insurance agent is one who is called into action, paid by, and controlled by a particular insurance company. *Browder,* 62 Ill.App.3d at 629, 20 Ill.Dec. at 143, 379 N.E.2d at 1211 (*citing Moone v. Commercial Casualty Ins. Co.,* 350 Ill. App. 328, 112 N.E.2d 626 (1953)). If Jones was paid[10] and controlled directly by Hancock, then he would be classified as an insurance agent. In that case, the plaintiffs could not assert a negligent misrepresentation claim against Jones (or Clegg and Sekara) because Hancock would have been Jones' principal during the exchange, negating the possibility that Hancock was a third party. On the other hand, if Jones was acting as an insurance broker independent of Hancock, then Hancock could have been a third party with whom the plaintiffs transacted business while guided by the information Jones provided. In short, the plaintiffs' indiscriminate use of the term "agent" and their failure to specify precisely the relationships between the parties precludes this court from determining whether the plaintiffs have satisfied the "third party" aspect of the analysis.

■■■ The plaintiffs make two arguments in response. First, they contend that the defendants' duty stems from the Unfair Methods of Competition and Unfair

---

**9.** Both defendants Sekara and Clegg concede that an insurance broker may be in the business of supplying information. *See* Defendant Clegg's Reply to Plaintiff's Response to the Motion to Dismiss at 4–5; Defendant Sekara's Reply to Plaintiff's Response to the Motion to Dismiss at 2.

**10.** The fact that Jones received commissions from Hancock in and of itself would not preclude his being classified as an insurance broker. *France v. Citizen Casualty Co.,* 400 Ill. 55, 58, 79 N.E.2d 28, 30 (1948); *see also Appleman on Insurance, supra* p. 15, at § 8727.

and Deceptive Acts and Practices Act, Ill. Rev.Stat. ch. 73, paras. 1028–1041 (1987) (underlying objective of scheme is to regulate insurance industry) (incorporating Ill. Rev.Stat. ch. 73, para. 761 (1987) (prohibiting misrepresentation and defamation in connection with insurance transactions)). This argument, however, ignores the fact that a plaintiff can recover economic losses under a negligent misrepresentation theory only when the defendant is in the business of supplying information for the guidance of others in their business relationships with third parties.

The Deceptive Practices Act would be relevant if it imposed upon Jones an affirmative duty to disclose information. Normally mere silence or a passive failure to disclose does not constitute a misrepresentation; instead, defendants are liable only for affirmative falsehoods or misstatements. W. Keeton, *Prosser and Keeton on Torts* § 106 (5th ed.1984). If, however, the defendant has a duty to speak (such as when he stands in some confidential or fiduciary relationship to the plaintiff), then a failure to speak may be actionable. *See, e.g., Zimmerman,* 156 Ill.App.3d at 161, 109 Ill.Dec. at 545, 510 N.E.2d at 413; W. Keeton, *supra,* at § 106. The Deceptive Practices Act, therefore, does not create liability for negligent misrepresentation when the defendant is not in the business of supplying information for the guidance of others in their business transactions with third persons; rather, it may be relevant in determining whether a defendant who is in the business of supplying information breached his duty by failing to inform the plaintiff of material facts. *Cf. Zimmerman,* 156 Ill App.3d at 161–62, 109 Ill.Dec. at 545, 510 N.E.2d at 413 (holding that real estate brokers had duty under Real Estate Broker and Salesman License Act, Ill.Rev.Stat. ch. 111, paras. 5701–5743 (1981) (repealed by P.A. 83–191, § 38, eff. Jan. 1, 1984), to disclose relevant informa-

tion and, therefore, plaintiff stated cause of action for common law fraud; brokers also liable for economic losses under negligent misrepresentation theory because they were in the business of supplying information).

■ Second, the plaintiffs assert that this court should follow the literal language of the Restatement (Second) of Torts § 552 (1965), which imposes liability for a negligent misrepresentation made merely "in the course of [one's] business," [11] when the parties are not in privity of contract. The plaintiffs reason that the courts in *Moorman* and its progeny were reluctant to allow tort remedies for economic loss only when the parties were in privity of contract, since contract law was "appropriate and sufficient to govern the economic relations between suppliers and consumers of goods." *Richmond v. Blair,* 142 Ill.App.3d 251, 257, 94 Ill.Dec. 564, 568, 488 N.E.2d 563, 567 (1985). In this case, the plaintiffs claim that they did not have a direct contractual relationship with Jones, Clegg, or Sekara and, therefore, are without contract remedies. Accordingly, the plaintiffs argue that when persons have no contractual remedies, courts should follow the more liberal standard of the Restatement and allow negligent misrepresentation claims against defendants who supply information in the course of their business —and not only when the defendants are in the business of supplying information.[12]

This argument is foreclosed, however, by the Illinois Supreme Court's decision that the *Moorman* doctrine can bar recovery of solely economic losses in tort even when the plaintiff has no other remedy against the defendant. *See Anderson Elec. v. Ledbetter Erection Corp.,* 115 Ill.2d 146, 152–53, 104 Ill.Dec. 689, 692, 503 N.E.2d 246, 249 (1986); *see also Zimmerman,* 156 Ill. App.3d at 164, 109 Ill.Dec. at 547, 510

---

**11.** *See supra* note 5.

**12.** Interestingly, although the plaintiffs now argue that this court should apply the less stringent Restatement standard, the allegations in their amended complaint track the more restrictive standard. *See* Amended Complaint, Count

XII, ¶ 29 ("At all times mentioned herein, Defendant, JONES, was in the business of providing information to be used by people in purchasing insurance policies to be used by people in purchasing insurance policies to be issued by a third party.").

N.E.2d at 415; *cf. East River,* 476 U.S. at 874–75, 106 S.Ct. at 2303–04 (denying recovery in tort for economic loss notwithstanding fact that warranty not available to plaintiffs). In sum, although the plaintiffs allege in conclusory fashion that Jones "was in the business of providing information to be used by people in purchasing insurance policies to be issued by a third party," the facts alleged in the amended complaint do not support that legal conclusion and, at times, even contradict it. Accordingly, the court dismisses the negligent misrepresentation counts and grants the plaintiffs leave to file a second amended complaint that sufficiently delineates the relationships among the parties and rectifies the foregoing deficiencies.

### B. Failure to Plead Fraud with Particularity

 Clegg also argues that Counts IV and V, alleging consumer fraud and common law fraud, respectively, should be dismissed pursuant to Rule 9(b) for failure to plead fraud with particularity. Rule 9(b) provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The objectives underlying this exception to the liberal notice pleading of the Federal Rules are to protect the reputations of potential defendants and to ensure adequate notice to the defendants of the critical facts. *Gross v. Diversified Mortgage Investors,* 431 F.Supp. 1080, 1087 (S.D.N.Y.1977), *aff'd,* 636 F.2d 1201 (2d Cir. 1980). Since the same stigma applies to the perpetration of statutory fraud as to the commission of common law fraud, Count IV, which alleges violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, likewise is subject to Rule 9(b). *Barr Co. v. Safeco Ins. Co. of Am.,* 583 F.Supp. 248, 258 (N.D.Ill.1984). The requirements of Rule 9(b), however, must be read in conjunction with Rule 8, which requires a short and plain statement of the claim. *Tomera v. Galt,* 511 F.2d 504, 508 (7th Cir.1975). Thus, in order to allege fraud sufficiently, a plaintiff must delineate the "time, place and particular contents of the false representations, as well as the identity of the party making the misrepresentation, and what was obtained or given up thereby." *Bennett v. Berg,* 685 F.2d 1053, 1062 (8th Cir.1982), *cert. denied sub nom. Prudential Ins. Co. v. Bennett,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983).

In this case the court concludes that Counts IV and V comply with the particularity requirement of Rule 9(b). The plaintiffs have alleged details regarding when Jones made the representations, the context in which the representations were made, and the specific details and written evidence of the representations. These averments are sufficient to meet the requirements of Rule 9(b). Discovery can provide further details. Therefore, this court denies the defendant's motion to dismiss Counts IV and V.

### IV. CONCLUSION

In summary, for the above reasons the court grants the defendants' motions to dismiss Counts VI, IX, and VII for failure to state a claim of negligent misrepresentation and grants the plaintiffs leave to file a second amended complaint by May 30, 1989. The court denies Clegg's motion to dismiss Counts IV and V for failure to plead fraud with particularity. All the defendants must answer or otherwise plead by June 19, 1989.