CAROLYN M. HASKELL *et al.*, Plaintiffs-Appellees, v. WALTER J. BLUMTHAL *et al.*, Defendants (Arab Termite and Pest Control of Danville, Inc., Defendant-Appellant).

Fourth District   No. 4—90—0150

Opinion filed October 11, 1990.

Bruce Baber, of Paris, for appellant.

Dale A. Cini, of Ryan, Cini & Bennett, of Mattoon, for appellees.

JUSTICE GREEN delivered the opinion of the court:

Defendant Arab Termite and Pest Control of Danville, Inc. (Arab), appeals an order entered January 26, 1990, in the circuit court of Edgar County, denying its request that plaintiffs Carolyn M. Haskell and Duane L. Haskell be required to pay its attorney fees pursuant to section 10a(c) of the Consumer Fraud and Deceptive Business Practices Act (Act) (Ill. Rev. Stat. 1989, ch. 121½, par. 270a(c)). That section states:

> "In any action brought by a person under this Section, the Court may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs *to the prevailing party.*" (Emphasis added.) Ill. Rev. Stat. 1989, ch. 121½, par. 270a(c).

Arab requested fees and costs in regard to count VIII of plaintiffs' complaint, which was directed against Arab charging it with violating the Act. That count had been dismissed in bar of action on plaintiffs' motion after a jury trial had started. After a hearing on Arab's request, the circuit court issued a letter opinion on January 22, 1990, and on January 26, 1990, entered the order on appeal which awarded Arab costs but denied its request for fees. The court explained its denial of fees as follows:

> "(1) Section [10a(c)] does not apply because the Count in question was never submitted to the jury;
>
> (2) even if the Section did apply, it does not authorize awarding attorney fees to 'prevailing' defendants;
>
> (3) even if it does, the Court will exercise its discretion and deny the request for fees."

We hold the court was in error in ruling that section 10a(c)

of the Act does not provide for an award of fees when (1) the charge of violation has not been passed upon by a trier of fact, or (2) the "prevailing party" is a defendant. However, we agree with the circuit court's determination that even if Arab was eligible to seek fees, the question of whether to award fees was a matter within the sound discretion of that court. We hold the record is sufficient to show the court gave sufficient consideration to Arab's request and did not abuse its discretion in denying fees. Accordingly, we affirm.

Plaintiffs brought suit on July 9, 1986, naming as defendants, in addition to Arab, Walter J. and Rosemary Blumthal, Cline's Real Estate, Inc. (Cline), and Margaret Thompson. The allegations of the complaint can be better understood after consideration of the situation giving rise to the litigation. The parties do not dispute that plaintiffs were the purchasers of a house owned by the Blumthals, and that Cline, and their agent Thompson, acted as the Blumthals' real estate agents to sell that property. The parties also do not dispute that (1) prior to the sale, the Blumthals contracted with Arab to treat the house for termite infestation; (2) at the time of the purchase, the buyers and sellers were represented by the same attorney, and the parties agreed to forego a termite inspection; (3) several months after the purchase of the house, plaintiffs were informed of further termite infestation; (4) plaintiffs contacted Arab, and Arab treated the house again; (5) after the retreatment, there was still evidence of active termite infestation; (6) plaintiffs did not contact Arab for another retreatment but sought retreatment from a different pest-control company; and (7) plaintiffs then filed the instant complaint.

Counts I, II, and III of the complaint charged Blumthals with breach of contract, fraud, and negligent misrepresentation, respectively. Counts IV and V, respectively, alleged both Cline and Thompson were liable for fraudulent misrepresentation and violation of the Act. Counts VI, VII, and VIII were brought against Arab on grounds of breach of contract, negligent misrepresentation, and breach of the Act in that order. On November 21, 1986, the circuit court granted the motion of Cline and Thompson to dismiss, without prejudice, the counts against them. On August 17, 1989, the court dismissed, without prejudice, counts I, II, and III, which were against Blumthals, pursuant to a settlement agreement by which Blumthals agreed to pay plaintiffs approximately $10,000.

Defendant Arab then filed a motion for summary judgment as to the three counts against it. The court granted defendant's motion for summary judgment as to the count alleging negligent misrepresentation but denied the motion as to the counts alleging breach of con-

tract and violation of the Act.

The case went to trial on counts VI and VIII on September 25, 1989. According to an undisputed affidavit filed in support of Arab's petition for attorney fees and costs and matters otherwise of record (1) on the first day of trial, prior to *voir dire*, Arab's attorney offered to not seek attorney fees if plaintiffs would dismiss with prejudice the count alleging a violation of the Act; (2) the offer was rejected, *voir dire* was had, opening statements were made, and both plaintiffs testified; (3) prior to the second day of trial, plaintiffs attempted to accept the offer regarding attorney fees; (4) Arab indicated the offer was no longer valid after trial began; (5) plaintiffs' attorney, nevertheless, orally moved to dismiss count VIII with prejudice; and (6) the court granted that motion and also granted Arab leave to pursue its petition for fees and costs.

On October 3, 1989, the court entered judgment on a jury verdict in favor of Arab and against plaintiffs as to the only remaining count.

The heart of this case is the question of whether the circuit court breached its discretion in denying Arab's request for attorney fees from plaintiffs. The plaintiffs do not argue vigorously that a defendant to a proceeding under the Act, such as Arab, cannot be a "prevailing party" within the meaning of section 10a(c) of the Act. (Ill. Rev. Stat. 1989, ch. 121½, par. 270a(c).) Nor do they strongly assert that Arab did not prevail when count VIII of plaintiffs' complaint was dismissed on plaintiffs' motion but in bar of action and without the issues ever having been submitted to a trier of fact.

We are aware of no reported case holding a defendant obtaining a judgment in his or her favor in regard to a charge made under the Act qualifies to seek attorney fees from the party bringing the action, but such a defendant is clearly a "prevailing party" by any reasonable interpretation of that phrase. In such a case, a defendant should be eligible to receive attorney fees "after a not-guilty verdict on the merits or a dismissal of a case found to be groundless or clearly frivolous harassment." (Friedman, *Private Right of Action Under the Illinois Consumer Fraud and Deceptive Business Practices Act*, 76 Ill. B.J. 748, 751 (1987) (hereinafter Friedman).) Friedman suggests, and we agree, that the award of fees to successful defendants is a tool provided by the Act to curb abuses. He noted, "[i]f the Act is seen by the practitioner to be a double-edged sword, it will not be pled without careful consideration." Friedman, 76 Ill. B.J. at 751 (1987).

In an article written prior to publication of the Friedman article, Andrea Saltzman, a member of the Illinois and California bars, set forth a list of some 88 Illinois statutes which provide for the award of

attorney fees. (Saltzman, *A Brief Look at Statutory Attorneys' Fees in Illinois*, 73 Ill. B.J. 266 (1985).) Of these statutes, eight provide for an award of fees for a "prevailing party." Subsequent research has revealed that six other statutes now so provide. More significantly, Federal legislation providing for proceedings to vindicate civil rights violations states in part:

> "In any action or proceeding to enforce [certain important provisions concerning civil rights], the court, in its discretion, may allow the *prevailing party*, other than the United States, a reasonable attorney's fee as part of the costs." (Emphasis added.) 42 U.S.C. §1988, at 379 (1988).

We are aware of no case, concerning the foregoing legislation, which holds that a defendant to such a proceeding is not considered to be a party who has prevailed and is, thus, subject to consideration for fees. Under Federal legislation regarding a claim of civil rights violation, a defendant who wins is deemed a "prevailing party." (*Patton v. County of Kings* (9th Cir. 1988), 857 F.2d 1379; *Roper v. Edwards* (11th Cir. 1987), 815 F.2d 1474.) A defendant in the above type of case has prevailed when the complaint against the defendant has been dismissed, in bar of action, for want of prosecution. *Anthony v. Marion County General Hospital* (5th Cir. 1980), 617 F.2d 1164.

■ The foregoing precedent and any commonsense interpretation of the phrase "prevailing party" makes clear that a defendant to a proceeding under the Act, who obtains a judgment in its favor which is in bar of action, is a "prevailing party" regardless of whether the charge of a statutory violation has been passed upon by a trier of fact.

Notably, section 10a(c) of the Act states the court "may" award fees to a "prevailing party," thus implying the award is within the discretion of the court. We have so held in regard to a request for fees by a party claiming a violation of the Act. (*Grimes v. Adlesperger* (1978), 67 Ill. App. 3d 582, 384 N.E.2d 537.) Accordingly, we must determine the criteria for the award of such fees and whether the circuit court abused its discretion in denying Arab fees here. No case arising under the Act setting forth such guidelines has been called to our attention. Accordingly, we must look elsewhere for guidance.

Section 502(g) of the Employee Retirement Income Security Act (ERISA), which is similar to section 10a(c) of the Act, provides that if brought under ERISA by participants, beneficiaries, or fiduciaries, a trial court "in its discretion may allow a reasonable attorney's fee and costs of action to either party." (29 U.S.C. §1132(g)(1) (1988).) In pass-

ing upon a trial court's refusal to make such an award in a suit brought under ERISA in an Illinois circuit court, the First District Appellate Court has stated:

"In construing this provision the Federal appellate courts have established several guidelines for determining whether to award attorney fees to a prevailing party. These guidelines are as follows:

'(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' position.' (*Hummel v. S.E. Rykoff & Co.* (9th Cir. 1980), 634 F.2d 446, 453.)

(Accord *Iron Workers Local No. 272 v. Bowen* (5th Cir. 1980), 624 F.2d 1255, 1266.) Not one of these guidelines is necessarily decisive. (*Carpenters Southern California Administrative Corp. v. Russell* (9th Cir. 1984), 726 F.2d 1410, 1416.) A showing of bad faith is not required to justify an award of attorney fees. (*Smith v. CMTA-IAM Pension Trust* (9th Cir. 1984), 746 F.2d 587, 590; *Baeten v. Van Ess* (E.D. Wis. 1979), 474 F. Supp. 1324, 1332.) As a general rule, a prevailing party in an ERISA action should be awarded her fees unless special circumstances would render such an award unjust. *Hollenbeck v. Falstaff Brewing Corp.* (E.D. Mo. 1984), 605 F. Supp. 421, 437." *Zervos v. Solo Cup Co.* (1987), 165 Ill. App. 3d 809, 812, 520 N.E.2d 823, 825.

The *Zervos* court was concerned with the award of attorney fees to a plaintiff and held the circuit court had erred in denying fees on the ground that bad faith upon the part of the defendant was necessary to support such an award. A different standard may be applicable to awards for defendants than for plaintiffs. In passing upon requests for attorney fees in suits to vindicate civil rights (42 U.S.C. §1988 (1988)), Federal courts have so indicated. (*Bittner v. Sadoff & Rudoy Industries* (7th Cir. 1984), 728 F.2d 820; *Mid-Hudson Legal Services, Inc. v. G & U, Inc.* (2d Cir. 1978), 578 F.2d 34.) In *Bittner*, the court indicated that while attorney fees should usually be awarded to successful plaintiffs, they should be awarded to defendants only when the suit brought against them is frivolous. Several Federal cases

have used adjectives similar to the word "frivolous" to describe the types of suit which permits award of attorney fees to a prevailing defendant. *Mid-Hudson*, 578 F.2d 34; *Lopez v. Aransas County Independent School District* (5th Cir. 1981), 570 F.2d 541.

Using a different standard to determine whether a prevailing defendant should be awarded fees than that used if a plaintiff prevails seems logical. Most of the statutes providing for such fees have been enacted to give plaintiffs remedies which would not otherwise be available, or which a plaintiff might not otherwise be able to afford. If a consumer is defrauded of a small amount, that consumer may be reluctant to bring an action if the recovery would be nearly or completely consumed by attorney fees. The exposure of a plaintiff to being required to reimburse a prevailing defendant for attorney fees is a deterrent to bringing an action. The chilling effect of such exposure should be considered most seriously in cases brought to vindicate constitutional civil rights. Thus, the scrutiny placed upon the criteria for fee awards to the defense in those cases may logically be more stringent than that imposed in proceedings to vindicate consumers' rights, the subject of the Friedman article.

■ Regardless of the difference between civil rights cases and consumers' rights cases, logic dictates some substantial difference between the standards for plaintiffs and defendants in regard to fees in consumer protection cases. The Act indicates a public policy to encourage plaintiffs who have a cause of action to sue even if recovery would be small. As stated in *Zervos*, attorney fees may, at times, be awarded plaintiffs without bad faith on the part of defendants. We have difficulty in envisioning a circumstance arising under the Act where fees should be awarded a defendant absent bad faith on the part of a plaintiff. As Friedman has indicated, the purpose of awarding fees to a defendant is to deter bad-faith conduct by a plaintiff and to reimburse a defendant when that occurs.

In recent years, prior to August 1, 1989, section 2—611 of the Code of Civil Procedure (Code) has provided for the signing of pleadings and that the signing constitutes a certificate by the pleader that the document "is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as *** delay." (Ill. Rev. Stat. 1987, ch. 110, par. 2—611.) That section further provides that the court is directed to impose sanctions against a party whose pleading is signed in violation of the statute. The sanctions include an award of attorney fees to adverse parties. Since August 1, 1989, section 2—611 has been super-

seded by Supreme Court Rule 137 (134 Ill. 2d R. 137), which has similar provisions, but makes the imposition of sanctions a matter upon which the court may exercise its discretion.

As we will explain, Arab's contention that it is entitled to fees is not based upon any misstatement of facts in count VIII of the complaint. Rather, it is based upon a theory that the known and alleged facts did not constitute a cause of action under the Act in favor of plaintiff and against Arab, and plaintiffs' counsel knew that but attempted to harass Arab into settlement.

■■ The detailed provisions of Supreme Court Rule 137 and its predecessor, section 2—611 of the Code, are more definite, in regard to sanctions, than the more general, shorter statement of section 10a(c) of the Act. At least in regard to Arab's contention here as to plaintiffs' counsel's knowledge and intent, we deem the criteria of Supreme Court Rule 137 to be appropriate to a determination of whether a sanction should have been imposed.

The special standard involved is whether the "knowledge, information, and belief" of plaintiffs' pleader in allegations of the complaint are not "warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law," and whether they are "interposed * * * to harass or to cause unnecessary delay." (134 Ill. 2d R. 137.) As we have stated, in making its determination, the circuit court was vested with discretion.

The thrust of the allegations of count VIII was that plaintiffs were assignees of Arab's contract with the Blumthals, and Arab either misrepresented the nature of termite damage to the house in question or failed to represent the true nature of the house. In *Grass v. Homann* (1984), 130 Ill. App. 3d 874, 474 N.E.2d 711, this court held that when a termite inspector made a report for purchasers of a residence which was knowingly incorrect and that report was then given to the purchasers the termite inspector was not subject to the Act because (1) the Act was not intended to cover "isolated breach of contract"; (2) the inspector did not have a sufficient nexus to the transaction involved; and (3) the plaintiff had a contractual cause of action against the inspector. The analogy between that case and this case is almost complete, and Arab's counsel had called attention to *Grass* on several occasions.

Subsequent to *Grass*, the Fifth District Appellate Court decided *Warren v. LeMay* (1986), 142 Ill. App. 3d 550, 491 N.E.2d 464. There, a termite inspector hired by sellers of a house had also made a fraudulent inspection report. Suit was brought by the purchasers partially against the termite inspector for violation of the Act. The court con-

tended this case differed from *Grass* in two respects. One was that the inspector there was more involved in the heart of the contract than in *Grass*. The other was that the inspector there had no contractual relationship with the purchasers as the seller had been required by regulation of the Veterans Administration, the entity financing the purchase, to hire and pay the termite inspector. Thus, the purchaser had no contractual right against the inspector. After distinguishing the cases, the *Warren* court then expressed strong disagreement with *Grass*, contending the weight of authority held a single transaction was enough to impose liability under the Act.

While the circuit court was in error in two of the reasons it gave for denial of fees, the record presented is sufficient to show the court gave adequate consideration to its exercise of discretion even if it was incorrect on the other points.

The record does indicate some threats were made by plaintiffs to Arab concerning obtaining punitive damages and attorney fees as to the count under the Act despite its knowledge of the precedent of *Grass*. After holding out for a waiver of any claim for attorney fees by Arab, plaintiffs then dismissed that charge after trial started. However, the strength of the precedent of *Grass* was countered to some extent by the opinion in *Warren*. Accordingly, the circuit court could determine plaintiffs could make a good-faith argument for the overruling of *Grass*. The threats and bickering back and forth, with plaintiffs finally giving in as to the count under the Act, did not necessarily prove that count was filed merely to harass. On this record we do not find the circuit court breached its discretion in denying Arab's request for fees.

We affirm for the reasons stated.

Affirmed.

KNECHT, P.J., and STEIGMANN, J., concur.