**Kenneth C. KNUDSON, Jr., and Charlene Farrell, Plaintiffs,**

v.

**Billy LeMARR, Melvin Bolas d/b/a B & M Aircraft, Defendants.**

**Billy LeMARR, Counterplaintiff,**

v.

**Kenneth KNUDSON, Counterdefendant.**

No. 87 C 7520.

United States District Court, N.D. Illinois, E.D.

March 20, 1992.

Paul Vincent Kaulas, David Anthony Kolb, Purcell & Wardrope, Chtd., Chicago, Ill., for plaintiffs.

Richard T. Ryan, Flynn, Murphy & Ryan, Chicago, Ill., for defendant Billy LeMarr.

Thomas W. Conklin, Conklin & Roadhouse, Chicago, Ill., for defendant Melvin Bolas.

## ORDER

NORGLE, District Judge.

Before the court is Billy LeMarr's ("LeMarr") petition for costs pursuant to Federal Rule of Civil Procedure 54(b). For reasons set forth below, the court denies the motion.

## FACTS

The amended complaint and counterclaim reveal that LeMarr advertised his 1972 Turbo Super Viking Bilanca single engine plane for sale in the February, 1987 edition of a national magazine. Kenneth C. Knudson ("Knudson"), an Illinois resident, called LeMarr at LeMarr's Arizona home and inquired about the airplane. Knudson expressed interest in purchasing the plane but insisted that it be inspected by a mechanic before he would buy.

On March 17, 1987, Knudson and Charlene Farrell ("Farrell") traveled to Tucson, Arizona to see the plane and watch the inspection of the plane. Melvin Bolas performed the inspection and stated it was in good mechanical condition. The next day, Knudson took an uneventful test flight of the plane with LeMarr and others in the cabin. That day, he agreed to buy the plane for $19,500. Knudson transferred $18,000 from his account in Chicago to LeMarr's Arizona account and gave a personal check for the $1,500 balance.

On March 20, Knudson flew the plane again, this time with a flight instructor and Farrell. The plane stalled, forcing an emergency landing at Tucson International Airport. The plane was inspected on the ground after the incident and found not to be flight-worthy. Knudson stopped payment on the check he wrote to LeMarr.

Knudson filed suit on August 27, 1987. His amended complaint alleged a myriad of theories including violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill.Rev.Stat. ch. 121½, ¶ 261 *et seq.*) and the Arizona Consumer Fraud Act (Ariz.Rev.Stat.Ann. § 44–1521 *et seq.*). On March 3, 1988, LeMarr filed a counterclaim against Knudson. The counterclaim sought $1,500 based on breach of contract, stating "[t]hat counter-defendant, KNUDSON, has willfully failed and refused to fully perform on the contract although requested to do so."

The final pretrial order was filed March 24, 1990, and the matter was set for trial on April 22, 1991. On that day, Knudson and Farrell moved to voluntarily dismiss their case. The court granted the motion and the matter proceeded to trial on LeMarr's claim. After hearing the evidence, the jury returned a verdict in the amount of $1,500 in LeMarr's favor and the court entered judgment on the verdict.

LeMarr then petitioned for attorney's fees and costs. The court denied the motion to the extent it sought fees based on Federal Rule of Civil Procedure 11. Alternatively however, LeMarr sought fees as a "prevailing party" under the Illinois Deceptive Trade Practices Act. Both Knudson's current and past counsel have filed objections to the petitions.

## DISCUSSION

"Fee litigation has become a heavy burden of the federal courts." *Ustrak v. Fairman*, 851 F.2d 983, 987 (7th Cir.1988). As this case poignantly demonstrates, fee litigation can prolong a case well beyond its fruition on the merits. "But for now we must continue to slog our way through these fee cases as best we can." *Id.* This court analyzes this fee petition in a two step process.

### I.

The Consumer Fraud and Illinois Deceptive Business Practices Act (the "Act") provides that a "prevailing party"

may be awarded attorney's fees and costs. Ill.Rev.Stat. ch. 121½, ¶ 270a(c) (1991). No doubt a plaintiff who wins his case pursued under the Act can receive an award of fees and costs in appropriate circumstances. *See Bandura v. Orkin Exterminating Co.*, 865 F.2d 816 (7th Cir.1988). *See also Cange v. Stotler & Co.*, 913 F.2d 1204 (7th Cir.1990) (fees for appeal). However, this case is not such a case. Here Knudson, when faced with the prospect of going to trial, dismissed all his claims before any action was taken. That left no claim under the Act of any kind as LeMarr's counterclaim was based solely on a deficiency in the agreed price and not on the Act. With no claim asserted under the Act it would be anomalous to claim that anyone is a prevailing party under the Act.

■ The case of *Haskell v. Blumthal*, 204 Ill.App.3d 596, 149 Ill.Dec. 619, 561 N.E.2d 1315 (4th Dist.1990), does not compel a contrary result. There, plaintiff voluntarily dismissed a claim against the only remaining defendant after a full day of trial. The court stated, "a defendant should be eligible to receive attorney fees 'after a not guilty verdict on the merits or a dismissal of a case found to be groundless or clearly frivolous harassment.'" *Id.* at 599, 149 Ill.Dec. at 621, 561 N.E.2d at 1317 (quoting Friedman, *Private Right of Action Under the Illinois Consumer Fraud and Deceptive Business Practices Act*, 76 Ill.B.J. 748, 751 (1987)). But here, the court has already determined that the pleadings were not frivolous within the meaning of Federal Rule of Civil Procedure 11. This court sees no reason to draw a distinction between frivolity under Rule 11 and under the Act. Therefore, as Knudson's case was not frivolous under Rule 11, LeMarr is not entitled to fees under the Act.

## II.

■ But because LeMarr is not entitled to fees under the Act does not necessarily mean he is foreclosed from fees altogether. Based on the fact that the litigation itself even occurred, a party may be able to receive fees.

■ The American rule is that the party who wins, or at least doesn't lose, is not usually entitled to fees. *O'Brien v. The Sage Gp.*, 141 F.R.D. 273, 275 (N.D.Ill. 1992). There are three exceptions to this rule. First, the "common fund exception" allows a court to award fees to a party whose litigation directly benefits others. *Chambers v. NASCO, Inc.*, — U.S. —, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 257–58, 95 S.Ct. 1612, 1621–22, 44 L.Ed.2d 141 (1975)), *reh'g denied*, — U.S. —, 112 S.Ct. 12, 115 L.Ed.2d 1097 (1991). Second, imposition of fees as a sanction is proper for "willful disobedience of a court order." *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967) (quoted in *Chambers*, 111 S.Ct. at 2133). Third, fees may be assessed when the party "'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Chambers*, 111 S.Ct. at 2133 (quoting *Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399, 428, 43 S.Ct. 458, 466, 67 L.Ed. 719 (1923)).

Here, there is obviously no benefit to a group of others to allow application of the common fund doctrine. Less obviously but equally clear from the record is that there has not been a willful disobedience of a court order. Knudson dismissed his claims on the day of trial with the consent of the court, not in violation of any order.

Arguably the most relevant exception here is the "bad faith" exception. The Supreme Court in *Chambers* discussed this exception extensively. There, Justice White stated for the majority,

> if a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," it may assess attorney's fees against the responsible party, as it may when a party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order...."

*Chambers*, 111 S.Ct. at 2133 (citations omitted).

Knudson, immediately before stopping payment on the check, had experienced a near crash landing in the airplane. Shortly thereafter, Knudson filed suit in federal court alleging he had been bilked into buying a worthless airplane by LeMarr. Le-

Marr counterclaimed for payment of $1,500 for the balance due on a plane costing nearly $20,000. Discovery proceeded for years, motions were filed, and the court resolved various pretrial matters. Finally, the court forced Knudson's hand and set the matter for a quick trial date. Knudson folded and took his losses. LeMarr went to trial and won all he sought, $1,500.

Up until this point, there had been little, if any, serious discussion that the position taken by Knudson was even remotely baseless. Indeed, it seems entirely reasonable that when a seller says an airplane runs great when in fact it does not, the buyer has reason to believe he was the victim of a fraud. *Cf. Tague v. Molitor Motor Co.,* 139 Ill.App.3d 313, 93 Ill.Dec. 769, 487 N.E.2d 436 (5th Dist.1985) (individual can maintain suit for material concealment about condition of vehicle). Taking suit in such a case cannot be seen as besmirching this edifice of the law or as a fraud. Therefore, none of the exceptions of the American rule apply to this case.

## CONCLUSION

LeMarr's petition for attorney's fees and costs is denied.

IT IS SO ORDERED.