DEAN GRAUNKE, Plaintiff-Appellee, v. ELMHURST CHRYSLER PLYMOUTH VOLVO, INC., Defendant-Appellant.

Second District   No. 2—92—0898

Opinion filed July 29, 1993.

Steven P. Bloomberg and David J. Freeman, both of Moss & Bloomberg, Ltd., of Bolingbrook (Stuart D. Gordon, of counsel), for appellant.

Lehrer, Flaherty & Canavan, P.C., of Wheaton (Maureen Flaherty, of counsel), for appellee.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiff, Dean Graunke, brought suit against defendant, Elmhurst Chrysler Plymouth Volvo, Inc., alleging claims of common-law fraud and a violation of the Consumer Fraud and Deceptive Business Practices Act (Act) (Ill. Rev. Stat. 1989, ch. 121½, par. 262 *et seq.*) arising from the plaintiff's purchase of a vehicle from defendant. A jury found in favor of defendant on the common-law fraud claim. Contemporaneously, a bench trial was held on the Act claim, and the trial court also entered judgment in favor of defendant on that claim.

Defendant subsequently filed a motion for attorney fees pursuant to section 10a(c) of the Act (Ill. Rev. Stat. 1989, ch. 121½, par. 270a(c)), which was denied by the trial court. Defendant filed a timely appeal contending that the trial court erred in refusing to award attorney fees.

The dispute in this case centered around plaintiff's purchase of a Chrysler New Yorker from defendant in September 1986. Plaintiff claimed he was led to believe that he had purchased a "brand new" 1987 New Yorker but discovered two years later that he had actually received a used 1986 New Yorker. In support of this claim, plaintiff offered a copy of a buyer's order which specified a 1987 vehicle.

Defendant maintained that plaintiff knew all along that he was purchasing a 1986 demonstration vehicle with 2,116 miles on it and that the "1987" in the buyer's order was a mistake which was brought to plaintiff's attention when he came to pick up the car. Defendant offered a number of documents, several of which were signed by plaintiff, identifying the vehicle as a 1986 New Yorker. These documents included a letter plaintiff wrote to Chrysler in 1987 complaining of problems with the performance of his "1986" New Yorker, an odometer statement signed by plaintiff indicating that the vehicle had 2,116 miles on it when he purchased the car, the title and registration forms for the vehicle, and an insurance application.

On January 28, 1992, the trial court entered judgment in favor of defendant on the Act claim, commenting:

"Mr. Graunke did indeed send a letter in which he referred to the vehicle as a 1986 Chrysler New Yorker *** and this letter was sent in 1987. His testimony on direct examination had repeatedly been that he first determined in summer of 1988 *** this was a 1986 vehicle.

I considered the other documents that were provided in the course of the transaction as well, and I noted Mr. Graunke's careful manner of going through those documents on the stand. And I noted his demeanor, and quite frankly I did not find his testimony to be credible. *** I believe that it was a 1986 vehicle, he knew it, and the overwhelming majority of the documents indicated it was a 1986 vehicle."

The trial court ordered that upon the filing of a petition for costs, defendant was to be awarded reasonable costs. On February 13, 1992, defendant filed a petition for attorney fees in the amount of $20,878.75, and costs in the amount of $515.20. This petition relied on section 10 of the Act, the documentary evidence presented at trial and the trial court's finding that plaintiff's testimony was not credi-

ble. Defendant provided a statement itemizing the hours expended by its attorneys in connection with this case. Deducted from that statement were $6,711.75 in charges for time "expended in connection with portions of the case not related to the Consumer Fraud Act count." Although defendant's petition asserted that it was necessary to be represented by two attorneys at trial, $4,655, representing the time the second attorney expended at trial, was deducted from the amount of the statement, "in order to avoid any claim of a duplication of effort."

After a hearing on July 1, 1992, the trial court denied defendant's request for attorney fees, but did award costs of $291.90. In reaching its decision on the question of fees, the trial court discussed the decision of the Appellate Court, Fourth District, in *Haskell v. Blumthal* (1990), 204 Ill. App. 3d 596:

> "I think the issue that we have to address first *** is the criteria for a defendant who is the prevailing party in a Consumer Fraud Act case to be awarded attorney's fees. As I understand it in looking at [the opinion in *Haskell* (204 Ill. App. 3d at 602)], 'We have difficulty in envisioning a circumstance arising under the Act where fees should be awarded a defendant absent bad faith on the part of a plaintiff.' "

The trial court also noted a reference in *Haskell* to Friedman, *Private Right of Action Under the Illinois Consumer Fraud and Deceptive Business Practices Act*, 76 Ill. B.J. 748 (1987): "As Friedman has indicated, the purpose of awarding fees to a defendant is to deter bad-faith conduct by a plaintiff and to reimburse a defendant when that occurs." (*Haskell*, 204 Ill. App. 3d at 602.) Finally, the court quoted from *Haskell*'s discussion of Supreme Court Rule 137 (see 134 Ill. 2d R. 137): "The special standard involved is whether the 'knowledge, information, and belief' of plaintiffs' pleader in allegations of the complaint are not 'warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law,' and whether they are 'interposed *** to harass or to cause unnecessary delay.' " *Haskell*, 204 Ill. App. 3d at 603, quoting Supreme Court Rule 137 (134 Ill. 2d R. 137).

After hearing arguments on the issue of attorney fees, the trial court commented:

> "This matter bothers me a great deal because I did find the testimony of the plaintiff in this case to be incredible. I did not believe it ***.
>
> I noted his occupation, his—the fact that the great number of documents that he was given on his second visit did indeed

indicate that he had purchased a 1986 rather than 1987 automobile. His application for insurance indicated a 1986 rather than a 1987 automobile, his own letter contradicted *** his testimony in open court that the first time he learned it was a 1986 automobile was when he telephoned Chrysler in 1988.

Yet the issue here to me, whether taking the facts as presented to a lawyer *** in this case, whether there was an exercise of bad faith in filing this case.

\* \* \*

' "Since the Act affords even broader consumer protection than does the common law action of fraud, it is clear that *** [the] plaintiff suing under the Act need not establish all of the elements of fraud as the Act prohibits any deception or false promise. [Citation.] And it is clear from the language of the Act, particularly its reference to false promise[ ], that liability is not limited to existing material facts. Furthermore, it is well established that under the Act the intention of the seller [and] (his good or bad faith) is not important and *** [the] plaintiff can recover under the Act for innocent misrepresentations." ' [*Buechin v. Ogden Chrysler-Plymouth, Inc.* (1987), 159 Ill. App. 3d 237, 249-50, quoting *Duhl v. Nash Realty, Inc.* (1981), 102 Ill. App. 3d 483, 495.]

Under the Consumer Fraud Act and under this *Buechin* case I am not prepared to state that there's a bad faith attempt to extend the law under these facts, I say it even though I did find his testimony to be incredible and I didn't believe that he met his burden of proof but I'm not prepared to say there was bad faith in bringing the lawsuit, and if you wish to take the matter to the Appellate Court I would certainly understand. I think that the whole issue needs to be clarified."

On appeal, defendant contends that the trial court erred in several respects in denying defendant's petition for attorney fees. First, defendant argues there should be no distinction between the circumstances under which attorney fees can be awarded to a prevailing defendant and a prevailing plaintiff under the Act. Second, defendant argues that, under the Act, attorney fees should be awarded to a prevailing defendant where the complaint is not well grounded in fact, irrespective of bad faith. Finally, defendant argues that it should have been awarded attorney fees in this case even if awards to prevailing defendants under the Act are limited by a "bad faith" requirement. Plaintiff responds that the trial court did not abuse its discretion in denying defendant's petition for attorney fees.

■ Section 10a(c) of the Consumer Fraud and Deceptive Business Practices Act provides:

"In any action brought by a person under this Section, the Court may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party." Ill. Rev. Stat. 1989, ch. 121½, par. 270a(c).

The common law does not contemplate an award of attorney fees to a prevailing party, and, therefore, statutes which allow for such awards must be strictly construed. (*Carson Pirie Scott & Co. v. State of Illinois Department of Employment Security* (1989), 131 Ill. 2d 23, 49; *Warren v. LeMay* (1986), 142 Ill. App. 3d 550, 583.) However, the primary rule in statutory construction, to which all other rules are subordinate, is to determine and give effect to the true intent of the legislature. (*People ex rel. Baker v. Cowlin* (1992), 154 Ill. 2d 193, 197; *Warren*, 142 Ill. App. 3d at 583.) In determining the intent of the legislature, a court should first consider the statutory language itself and, where that language is clear, it should be given effect without resorting to other aids for construction. *Baker*, 154 Ill. 2d at 197.

■ The language of section 10a(c) clearly and unambiguously provides that a prevailing defendant may be awarded reasonable attorney fees by the trial court. (Accord *Haskell*, 204 Ill. App. 3d at 600; see also Saltzman, *A Brief Look at Statutory Attorneys' Fees in Illinois*, 73 Ill. B.J. 266, 277 (1985).) We find nothing in the language of the Act to limit recovery for either prevailing plaintiffs or defendants to cases in which their opponents have acted in "bad faith." (See *Haskell*, 204 Ill. App. 3d at 602; see also *Zervos v. Solo Cup Co.* (1987), 165 Ill. App. 3d 809, 812 (showing of bad faith is not a requirement for permitting attorney fees award in ERISA actions).) As this court has previously recognized, determining whether to award attorney fees under the Act rests in the sound discretion of the trial court. *Totz v. Continental Du Page Acura* (1992), 236 Ill. App. 3d 891, 910; *Roche v. Fireside Chrysler-Plymouth, Mazda, Inc.* (1992), 235 Ill. App. 3d 70, 86.

Defendant asserts that the trial court read the decision in *Haskell* "as absolutely barring an award of attorney's fees to any prevailing defendant unless it is demonstrated that the plaintiff acted 'in bad faith' in bringing the lawsuit," and that the trial judge "felt he was not empowered to exercise his discretion in considering the fee issue." In *Haskell*, the court stated only that it had "difficulty in *envisioning* a circumstance arising under the Act where fees *should* be awarded a defendant absent bad faith on the part of a plaintiff." (Emphasis added.) (*Haskell*, 204 Ill. App. 3d at 602.) We interpret this lan-

guage to be a general commentary on the policy underlying attorney fees awards, rather than a pronouncement limiting fee awards to cases in which there is bad faith on the part of a plaintiff. As we have stated, attorney fees may be awarded to either prevailing plaintiffs or prevailing defendants at the discretion of the trial court, and section 10a(c) requires neither a showing that the opposing party acted in bad faith, nor even that its pleadings are not well grounded in fact.

It is unclear from the record whether the trial court misinterpreted the holding in *Haskell* as precluding an award of attorney fees to defendant if plaintiff had not acted in bad faith. It is possible to read the trial court's comments as merely emphasizing its finding that plaintiff's claim was not brought in bad faith and, in its discretion, declining to award attorney fees.

■■ However, taking the comments in their entirety, it appears that the trial court may have considered a finding of plaintiff's bad faith to be a prerequisite to its exercise of discretion to award fees. The court specifically referred to the "bad faith" element as discussed in *Haskell*, the Friedman article and Supreme Court Rule 137. It observed that, "as a trial judge I have discretion as to whether to award fees *under those standards*." (Emphasis added.) The court framed the issue before it as follows: "taking the facts as presented to a lawyer *** in this case, whether there was an exercise of bad faith in filing this case." It then concluded that it could not say that there was bad faith in filing the suit and suggested that the issue might best be clarified by an appeal.

Because of the possibility that the judge may have misinterpreted *Haskell* as precluding an award of attorney fees to defendant in the absence of a showing of plaintiff's bad faith in filing suit, we consider it best to vacate the order and remand this cause to the trial court. Our action will revest the trial court with jurisdiction either to clarify the basis of its decision or, if it misapplied the law, to reexamine its decision in light of the principles discussed herein. Whether attorney fees are to be awarded to defendant is a matter reserved to the trial court's discretion.

In view of the additional arguments raised by the parties, it is further necessary to discuss the standard which the trial court should apply in exercising its discretion to award fees under the Act, as well as the factors which might be considered. In *Haskell*, the appellate court held that different standards should apply to prevailing plaintiffs and prevailing defendants when deciding the issue of discretionary attorney fees awards. Although we find *Haskell* to contain an excellent discussion of the subject of fee awards, we would not agree with that

court's use of the term "standards" in this context. In our opinion, it is more accurate to state that the policy considerations which come into play in evaluating a plaintiff's application for attorney fees may not mirror those considerations applicable to a defendant's application. Choosing to award attorney fees to either prevailing defendants or plaintiffs lies solely within the trial court's discretion, and the only applicable "standard" by which the exercise of that discretion should be measured is whether it has been abused. (*Totz*, 236 Ill. App. 3d at 910; *Roche*, 235 Ill. App. 3d at 86.) However, there are a number of factors and considerations, as *Haskell* explains, which may properly bear upon the court's ultimate decision.

Although the Act fails to specify what factors should or may be considered by a court when determining whether to award attorney fees, the legislative purpose behind permitting such awards to prevailing parties under the Act has been clearly defined and should be given consideration by a trial court. A consumer who has been defrauded in a small amount may be reluctant to bring an action for recovery out of fear that any eventual recovery would be consumed or overwhelmed by the expense of securing representation. (*Haskell*, 204 Ill. App. 3d at 602; *Totz*, 236 Ill. App. 3d at 910.) Recognizing the Illinois legislature's desire to eradicate all forms of deceptive and unfair business practices and to grant appropriate remedies to defrauded consumers (*Buechin*, 159 Ill. App. 3d at 249-50), the Act permits prevailing plaintiffs to recover attorney fees at the discretion of the trial court. However, prevailing defendants are also permitted to request reimbursement for the costs and attorney fees they expend defending themselves from claims of commercial wrongdoing, presumably in part to deter baseless claims of fraud and to protect honest and fair businesses from potential abuse of the Act's provisions (*Haskell*, 204 Ill. App. 3d at 601-02).

The body of law pertaining to other statutory attorney fees awards provides another source of guidance regarding the factors a court may consider when determining whether to award attorney fees to a prevailing party under the Act. (See Saltzman, 73 Ill. B.J. 266; Friedman, 76 Ill. B.J. 748; see also generally *Haskell*, 204 Ill. App. 3d at 599-603.) Cases interpreting section 502(g) of the Employee Retirement Income Security Act (ERISA) (29 U.S.C. §1132(g)(1) (1988)) are also instructive. These sources suggest the following factors which a court might consider: (1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees against the opposing party would deter others from acting under similar circumstances; (4)

whether the party requesting fees sought to benefit all consumers or businesses or to resolve a significant legal question regarding the Act; and (5) the relative merits of the parties' positions. (See *Haskell*, 204 Ill. App. 3d at 601, citing *Zervos*, 165 Ill. App. 3d at 812, citing *Hummell v. S.E. Rykoff & Co.* (9th Cir. 1980), 634 F.2d 446, 453.) We recognize that no single factor is necessarily controlling, nor is this list an exhaustive one. (Accord *Carpenters Southern California Administrative Corp. v. Russell* (9th Cir. 1984), 726 F.2d 1410, 1416.) Thus, the existence of bad faith in the action by an opposing party is not the only consideration, but it is an important factor, in some cases the controlling one, which should be considered by a court deciding whether to award attorney fees.

For the foregoing reasons, the circuit court's order denying fees is vacated, and the cause is remanded for further proceedings consistent with this opinion.

Vacated and remanded with directions.

GEIGER and QUETSCH, JJ., concur.