Yossi **HAIMBERG**, Plaintiff–Appellee, Cross–Appellant

v.

**R & M AVIATION, INC.** and Michael **R. Carey,** Defendants–Appellants, Cross–Appellees.

Nos. 99–3554, 99–3673.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 24, 2000.

Decided March 13, 2001.

Before FLAUM, Chief Judge,
MANION, EVANS, Circuit Judges.

### ORDER

Yossi Haimberg sued R & M Aviation, Inc. and its owner, Michael Carey, stating five separate causes of action based on an allegedly deficient airplane inspection. One count was dismissed before trial, and after a three-day jury trial, the district court directed a verdict for the defendants on two counts. On a fourth count, the jury awarded Haimberg $50,000 in compensatory damages, and on the fifth count, the court awarded Haimberg $670.00. Both sides subsequently filed post-trial motions, all of which the district court denied. Both the plaintiff and the defendants appeal. We affirm.

### I. Background

Yossi Haimberg is a resident of Florida with his own medical services business. Haimberg is also a licensed pilot and, in

September 1996, he began searching for a used aircraft that would accommodate his business and personal needs. On the Internet, Haimberg came across an advertisement by Aircraft Sales Corporation ("ASC") of Wheeling, Illinois, for a Piper Navajo, the type of airplane he wanted.

Before completing the purchase, Haimberg wanted an inspection to determine whether the airplane was in compliance with Federal Aviation Administration directives and to determine its true condition. Because he lived in Florida, Haimberg asked ASC to recommend a local mechanic knowledgeable about Piper airplanes. On ASC's recommendation, Haimberg contacted R & M Aviation, Inc. ("R & M"), an FAA-approved aircraft repair station located in DeKalb, Illinois. Haimberg testified that he phoned R & M's owner/operator, Michael Carey, and asked whether he had any business contacts with ASC. Although Carey denied any such relationship, it turned out that he had conducted extensive business with ASC. At trial, Carey admitted that he had worked on over 50 aircraft for ASC and in August 1996 had even performed repair work on the Piper Navajo in question.

Because he was not aware of this information at the time, Haimberg hired R & M to perform the pre-purchase inspection. Haimberg and Carey agreed that the inspection would require about fourteen to sixteen hours of billable labor. However, Haimberg testified that he instructed Carey, if the time frame was insufficient, to call him to discuss how to proceed. Carey testified that the inspection consisted of a physical inspection of the aircraft, review of the aircraft logs and research into applicable FAA Airworthiness Directives. After the inspection, Carey provided a summary of the inspection results to Haimberg by telephone, as well as a written report. The written report included an indication

that "no damage history was detected in the logs or visible on the aircraft," that "our overall impression of the aircraft was good," that "in August of this year [1996], R & M Aviation, Inc. installed a fresh overhauled heater, and we serviced the air conditioning system at that time and it worked very well," and that "the Airworthiness Directives list is included, but only shows the major components due to the time restrictions."

However, R & M's inspection is more noteworthy for the information it did not contain. Although the report referred to R & M's earlier heating and air conditioning work, it made no mention that, two weeks prior to R & M's inspection, AMR Combs, an FAA-approved repair station in Grand Rapids, Michigan, had performed a pre-purchase inspection on the Piper airplane and refused to return the plane to service because it was not airworthy. AMR Combs found that the airplane was not in compliance with at least one FAA directive. Also, AMR Combs' inspection report listed approximately forty-two discrepancies or problems with the aircraft, while R & M listed only a few of those discrepancies on its own report.

There is some discrepancy as to when Carey and R & M knew of AMR Combs' inspection. Carey testified that he was not aware of the AMR Combs inspection until he had completed his own inspection. However, in response to written interrogatories, Carey stated that R & M was made aware of the inspection about the same time as it began its own inspection for Haimberg. Additionally, an AMR Combs mechanic testified that he had most likely inserted a maintenance sticker into the flight logbooks indicating that he had performed an inspection and grounded the airplane. Those logbooks accompanied the airplane when R & M received it to do its pre-purchase inspection for Haimberg. In

any case, Carey admitted that he had AMR Combs' discrepancy list while he still had the aircraft and that he did not call AMR Combs about it, that he did not make a follow-up call to Haimberg regarding the discrepancies, and that he did not request more time to reconsider the completeness of his own inspection.

After receiving R & M's inspection report, Haimberg negotiated with ASC to repair the problems found by R & M. That repair work was performed by R & M, and Haimberg then purchased the airplane from ASC for $168,400. Upon delivery of the plane to him in Florida, Haimberg discovered a number of significant problems beyond those listed on R & M's pre-inspection report, including leaking fuel tanks, bad rings and cylinders, a faulty fuel delivery system, water leakage in the avionics bays, and worn landing gear. In addition, the airplane was not in compliance with certain FAA directives, and an FAA inspector grounded the airplane pending repairs. In the ensuing months, Haimberg spent over $75,000 repairing the airplane.

Haimberg sued R & M and Carey based on five theories, although Count III, a negligence claim, was dismissed on the plaintiff's motion before trial. Count I alleged violations of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 *et seq.* (the "Act"). This Count was tried to the court. *See Martin v. Heinold Commodities, Inc.*, 163 Ill.2d 33, 205 Ill.Dec. 443, 643 N.E.2d 734, 755 (Ill. 1994) (no right to jury for claim under the Act). The court concluded that, by failing to inform Haimberg of their relationship with ASC, the defendants had fraudulently induced Haimberg to hire them to inspect the airplane and consequently awarded Haimberg $670.00, the cost of the inspection. Counts II and V alleged common law fraud and breach of contract, respec-

tively. At the close of evidence, the court directed a verdict for both defendants on both counts. Count IV alleged that the defendants had negligently misrepresented the condition of the airplane. The jury agreed and awarded Haimberg $50,000 in compensatory damages. Both sides filed post-trial motions, which the district court denied. Both sides now appeal.

## II. DISCUSSION

### A. Illinois' *Moorman* Economic Loss Doctrine

■ The defendants initially ask us to consider whether the district court erred in permitting Haimberg to recover $50,000 based on the defendants' negligent misrepresentation in light of Illinois' economic loss doctrine, which restricts recovery of economic damages in tort cases. *See Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1992). Because this is a question of law, we review the district court's conclusion *de novo. See Harrell v. Cook*, 169 F.3d 428, 431 (7th Cir.1999).

■ Specifically, the *Moorman* doctrine prohibits recovery in tort for purely economic losses, which include "costs of repair," *Moorman*, 61 Ill.Dec. 746, 435 N.E.2d at 449, such as the $50,000 award in the present case. The Illinois Supreme Court based the economic loss doctrine on the conclusion that when the "defect is of a qualitative nature and the harm relates to the consumer's expectation that a product is of a particular quality so that it is fit for ordinary use, contract, rather than tort, law provides the appropriate set of rules for recovery." *Id.*, 61 Ill.Dec. 746, 435 N.E.2d at 451. However, the Illinois Supreme Court has also recognized certain exceptions to its *Moorman* doctrine. *See id.*, 61 Ill.Dec. 746, 435 N.E.2d at 452; *Fireman's Fund Ins. Co. v. SEC Donohue*,

*Inc.*, 176 Ill.2d 160, 223 Ill.Dec. 424, 679 N.E.2d 1197, 1199 (1997). One exception applies "where one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representations." *Moorman*, 61 Ill.Dec. 746, 435 N.E.2d at 452. A "precise, case-specific inquiry is required to determine whether a particular enterprise is 'in the business of supplying information for the guidance of others in their business transactions.'" *Rankow v. First Chicago Corp.*, 870 F.2d 356, 361 (7th Cir. 1989). The district court concluded that the defendants were in the business of supplying information and therefore the *Moorman* doctrine did not preclude Haimberg's recovery based on their negligent misrepresentation.

■ The Illinois Supreme Court has stated that the appropriate focus of this exception is whether the defendant is truly in the business of supplying information or whether the information is instead provided "ancillary to the sale or in connection with the sale of merchandise or other matter." *Fireman's Fund*, 223 Ill.Dec. 424, 679 N.E.2d at 1201. If it is the former, the information provider exception applies and the *Moorman* doctrine does not preclude recovery of economic damages; if it is the latter, the exception does not apply and the *Moorman* doctrine precludes the recovery of economic damages. In deciding whether information is incidental to a tangible product, a court should look to the ultimate result of the work. *See id.* (information provided was incidental to the end product—the water system that engineer had designed—and therefore *Moorman* doctrine applied); *2314 Lincoln Park West Condo. Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 136 Ill.2d 302, 144 Ill.Dec. 227, 555 N.E.2d 346 (1990) (information provided was incidental to condominiums that archi-

tects had designed and therefore *Moorman* doctrine applied).

The defendants argue that the pre-purchase inspection was incidental to a tangible product, the airplane, and therefore recovery of economic damages is prohibited. However, the district court found that the pre-purchase inspection report was not likely to "manifest itself physically." In other words, the information would never become an airplane, as would an architect's design for a building. Rather, its ultimate purpose was to assist the plaintiff in his decision to either purchase or reject the airplane. *See Tribune Co. v. Geraghty & Miller, Inc.*, No. 97 C 1889, 1997 WL 438836 (N.D.Ill. July 25, 1997) (company hired to evaluate whether property, which plaintiff was considering purchasing, contained any environmental concerns could be held liable for its negligent misrepresentation, and *Moorman* doctrine did not preclude recovery of economic damages).

The district court relied on, and we find instructive, a recent Illinois appellate court decision addressing whether the *Moorman* doctrine barred recovery against an architect or engineer hired solely to provide information, rather than to design a building. *See Tolan and Son, Inc. v. KLLM Architects, Inc.*, 308 Ill.App.3d 18, 241 Ill. Dec. 427, 719 N.E.2d 288 (1999). The *Tolan* court acknowledged that there was a continuum of business providers, ranging from pure information providers, such as lawyers, accountants and inspectors, to middle ground cases, such as insurance agents and financial advisors, to tangible product providers, such as manufacturers. *Id.*, 241 Ill.Dec. 427, 719 N.E.2d at 296–97. The first category "includes businesses that provide a product that consists solely of information. The supplying of information need not encompass the enterprise's entire undertaking but must be central to the business transaction between the par-

ties.... This category involves those situations where the value of the services lies in the analytical work." *Id.* at 297 (citations omitted). The court then concluded that where an architect or engineer was engaged solely to provide information, "it could be considered to be in the business of supplying information for the guidance of others." *Id.* at 298.

In the present case, the information provided, the pre-purchase inspection report, constituted the entire transaction between Haimberg and the defendants. The district court appropriately likened the defendants' dealings with Haimberg to a client's dealings with an accountant or lawyer. In such cases, the client relies upon the professional's knowledge and expertise, which cannot be memorialized in a contract. The "value of the services rendered lies in the ideas behind the documents, not in the documents themselves.... Application of the Moorman doctrine limiting recovery of purely economic losses to contract, therefore, is inappropriate where a relationship results in something intangible." *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill.2d 137, 201 Ill.Dec. 71, 636 N.E.2d 503, 515 (1994). While Haimberg may have later decided to hire R & M to provide other more tangible services, such as repair work, here it was hired by Haimberg solely to provide information upon which he would rely in deciding whether or not to buy the airplane. The value of these services lay entirely in the defendants' analytical work, their inspection of the condition of the airplane.

Accordingly, we find that the district court did not err in permitting Haimberg to recover economic damages in tort.[1]

**B. Judgment as a Matter of Law**

 Next, the defendants contend that the district court erred in denying their motion for judgment as a matter of law on Haimberg's negligent misrepresentation claim. The standard of review for the denial of a motion for judgment as a matter of law is *de novo*. *See Tincher v. Wal–Mart Stores, Inc.*, 118 F.3d 1125, 1129 (7th Cir.1997). This court limits its inquiry to whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the non-moving party. *Id.*

 Under Illinois law, to prevail on a claim for negligent misrepresentation, the plaintiff must establish (1) a false statement of material fact, (2) negligence in ascertaining the truth of the defendant's statement, (3) an intention to induce the other party to act, (4) action by the other party in reliance on the truth of the statements, (5) damage to the other party resulting from such reliance, and (6) duty owed by the defendant to plaintiff to communicate accurate information. *See Weisblatt v. Chicago Bar Ass'n*, 292 Ill.App.3d 48, 225 Ill.Dec. 993, 684 N.E.2d 984, 990 (1997). The defendants argue that the record contains no evidence to establish

1. Defendants ask us to certify this issue to the Illinois Supreme Court under Circuit Rule 52 and Illinois Supreme Court Rule 20, but we decline to do so. While the Illinois Supreme Court has not specifically addressed the precise facts of this case, the existence of the information supplier exception to the *Moorman* doctrine is not in dispute. *Moorman's* progeny, including subsequent Illinois Supreme Court cases, federal district court cases from Illinois and the recent Illinois appellate court decision in *Tolan*, provide sufficient guidance for our analysis of this fact-specific case. *See Matthiessen v. Bd. of Educ. of North Chicago Comm. High School Dist. 123, Lake County, Ill.*, 857 F.2d 404, 407 n. 3 (7th Cir.1988) (certification is not necessary where Illinois case law is clear enough to divine its meaning).

that they made a false statement of material fact. In ruling on the defendant's post-trial motion, the district court concluded that the jury had sufficient evidence from which it could find that the defendant made a false statement of material fact. We agree. First, the jury learned that Carey failed to supplement the pre-purchase inspection report with the additional report from AMR Combs. Next, an AMR Combs mechanic testified that he had most likely inserted a maintenance sticker into the flight logs which accompanied the airplane, indicating that R & M had that information available to it when it did its own inspection. In addition, Carey testified that once he learned of AMR Combs' inspection, he did nothing to reconcile his own inspection to at least determine whether or not he thought AMR Combs' negative findings were valid. Together this evidence was more than sufficient to establish that the defendants failed to disclose to Haimberg the true condition of the airplane.

The failure to disclose a material fact is no less a misrepresentation than an affirmative assertion of a falsehood. *See Stewart v. Thrasher*, 242 Ill.App.3d 10, 182 Ill.Dec. 930, 610 N.E.2d 799, 803 (1993). At the very least, Haimberg needed this information to make an accurate determination of whether to purchase the airplane and to ascertain its value. More importantly, Haimberg needed this information for his own safety so as not to risk his life by flying a defective airplane. Therefore, viewing all of this evidence in the light most favorable to Haimberg, we believe that there was sufficient evidence for the jury to find that the defendants made a false statement. *See, e.g., Perschall v. Raney*, 137 Ill.App.3d 978, 92 Ill.Dec. 431, 484 N.E.2d 1286 (Ill.App.Ct.1985) (judgment against termite inspector for negligent misrepresentation was not against manifest weight of the evidence).

The defendants contend that the plaintiff knew the inspection was not an exhaustive one and therefore they should not be held liable for the inspection report's missing information. The defendants overlook the fact, however, that R & M not only failed to note significant defects with the Piper airplane, but also failed to acknowledge the existence or conclusions of another inspection performed only weeks before their own that disclosed many defects. Thus, based on the facts known to them at the time of their inspection, the defendants did not provide an accurate report, even for the limited purpose for which they were hired. Haimberg testified that he had told the defendants he was willing to pay more for the inspection if it was necessary to expand its scope. The AMR Combs inspection report clearly required a more thorough examination, yet the defendants did not even give Haimberg the chance to consider whether he wished a more exhaustive inspection. They instead declined to tell him about the AMR Combs inspection. Even if Haimberg did not request R & M to perform an exhaustive inspection, the jury had evidence from which it could conclude the defendants had negligently made false statements in the limited pre-inspection report which it was paid to provide.

## C. Attorney's Fees

■ Lastly, we turn to plaintiff's request that we reverse the district court's order denying him attorney fees under the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/10a(c) (the "Act"). We review the district court's decision concerning attorney fees under the Act for an abuse of discretion. *Casey v. Jerry Yusim Nissan, Inc.*, 296 Ill.App.3d 102, 230 Ill.Dec. 575, 694 N.E.2d 206, 209 (Ill.App.Ct.1998).

Section 10a(c) of the Act provides that the court "may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party." 815 ILCS 505/10a(c). The purpose and intent of the Act is to eradicate "all forms of deceptive and unfair business practices and to grant appropriate remedies to defrauded consumers." *American Buyers Club of Mt. Vernon, Illinois, Inc. v. Honecker*, 46 Ill.App.3d 252, 5 Ill.Dec. 666, 361 N.E.2d 1370, 1374 (1977). The provisions of the Act are to be liberally construed to effect its purpose. 815 ILCS 505/11a.

The district court denied Haimberg's request for attorney fees after applying the following factors [R28, at 9–10]:(1) the degree of bad faith, if any, by the defendants; (2) the defendants' ability to pay a fee award; (3) the deterrent effect of an award; (4) the relative merits of the parties' cases; and (5) whether the plaintiff's action vindicated a significant public interest instead of, or in addition to, plaintiff's own private interest. *See Graunke v. Elmhurst Chrysler Plymouth Volvo, Inc.*, 247 Ill.App.3d 1015, 187 Ill.Dec. 401, 617 N.E.2d 858, 863–64 (1993). Applying these factors, the district court determined that this was not a case infected by bad faith, that an award of fees would have a limited deterrent effect in the future because of the limited number of pre-purchase inspections performed by R & M, that the defendants' case had merit and the case turned closely upon credibility determinations and that the plaintiff's case was overwhelmingly private in nature.

▮ Haimberg argues that the district court's determination did not correctly measure the degree of culpability of the defendants and that it ignored significant and substantial evidence that R & M intended for Haimberg to purchase the airplane based on the false inspection report.

However, the district court concluded that the defendants had not specifically intended to induce Haimberg to purchase the plane; rather, the defendants had violated the Act by failing to disclose their prior dealings with ASC and thus inducing Haimberg into hiring them to perform the inspection. Haimberg was effectively deprived of the independent pre-purchase inspection he sought, and the district court believed it was sufficient to award Haimberg the cost of the inspection, rather than the full costs of repair or attorney's fees.

Haimberg contends that the defendants knew he was considering whether to purchase the airplane, and that they provided a "good" inspection report to persuade Haimberg to do so. He claims that the defendants should have known that, by providing a positive recommendation of the airplane, they would induce him to purchase it. Haimberg relies on *Warren v. LeMay* to support his contention that the defendants are considered to intend the necessary consequences of their actions. *See* 142 Ill.App.3d 550, 96 Ill.Dec. 418, 491 N.E.2d 464, 474 (Ill.App.Ct 1986) (where termite inspector rendered faulty inspection report, he was held liable for his misrepresentation to buyers of home). However, the district court found that there was insufficient evidence at trial that the defendants knew Haimberg wanted to buy a "good" airplane. Indeed, Haimberg's mechanic testified that there are a number of reasons to purchase an airplane and that a person could be "looking for a bad airplane that they can put investment money in to make a good airplane to resell at a later time."

Haimberg also argues that the district court improperly considered the absence of bad faith by the defendant. Haimberg argues that bad faith, or the lack thereof, is an improper consideration in deciding whether to award attorneys fees to pre-

vailing plaintiffs, rather than to prevailing defendants. *See Haskell v. Blumthal,* 204 Ill.App.3d 596, 149 Ill.Dec. 619, 561 N.E.2d 1315, 1319 (1990) (award of attorney's fees to a prevailing defendant is only appropriate upon a finding of bad faith by the plaintiff; no such requirement for prevailing plaintiffs); *Casey,* 230 Ill.Dec. 575, 694 N.E.2d at 210 (same). *But see Graunke,* 187 Ill.Dec. 401, 617 N.E.2d at 862 (attorney's fees may be awarded to either prevailing plaintiffs or prevailing defendants at the discretion of the trial court, and Section 10a(c) does not require a showing of bad faith by either party). Haimberg essentially argues the district court's determination that the defendants did not act in bad faith was improperly dispositive in its decision to deny attorney's fees.

In its post-trial ruling, the district court acknowledged that Illinois appellate decisions contained differing language regarding the appropriate standard to apply and determined that, even if it disregarded bad faith altogether, the remaining factors still weighed against awarding attorney's fees in this case. We note that the clear and unambiguous language of Section 10a(c) does not mention bad faith. Indeed, it does not mention any factors at all, but rather leaves the entire decision regarding an award of attorney's fees to the discretion of the trial court. In addition, the language makes no distinction between prevailing plaintiffs and prevailing defendants. However, we need not resolve this dispute and leave its resolution to the Illinois courts. Because the district court considered Haimberg's arguments in its post-trial ruling, and still denied an award of attorney's fees, there is no danger that the district court relied on an improper standard in its decision. *See Graunke,* 187 Ill.Dec. 401, 617 N.E.2d at 862–63 (case remanded because of possibility that trial court may have improperly considered a finding of bad faith to be a prerequisite to

its exercise of discretion to award fees). Under these circumstances, we do not believe that the district court abused its discretion in denying attorney's fees to Haimberg.

### III. Conclusion

For the reasons stated herein, we conclude that Illinois' *Moorman* doctrine of economic loss does not preclude the plaintiff's recovery of economic damages in tort because the defendants were in the business of supplying information for the guidance of others. We also find that the district court did not err in denying the defendants' motion for judgment as a matter of law, and that the jury had sufficient evidence from which it could conclude that the defendants had negligently made false statements in their inspection report. Lastly, we find that the district court did not abuse its discretion in denying the plaintiff an award of attorney's fees under the Illinois Consumer Fraud and Deceptive Practices Act. Accordingly, we affirm the decision of the district court.